1
2
3
4
5
6
7

**JOHNSON FISTEL, LLP**
Frank J. Johnson (SBN 174882)
FrankJ@johnsonfistel.com
Brett M. Middleton (SBN 199427)
BrettM@johnsonfistel.com
Jonathan M. Scott (SBN 323322)
JonathanS@johnsonfistel.com
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

*Counsel for Plaintiff Grant Smith*

8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| GRANT SMITH, derivatively on behalf of FUNKO INC., a Delaware corporation, | Case No.: 2:22-CV-3155 |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, GINO DELLOMO, MICHAEL LUNSFORD, CHARLES DENSON, ADAM KRIGER, KEN BROTMAN, DIANE IRVINE, AND SARAH KIRSHBAUM LEVY, | DEMAND FOR JURY TRIAL |
| Defendants, | |
| -and- | |
| FUNKO INC., a Delaware corporation, | |
| Nominal Defendant. | |

24
25
26
27
28

---

## <u>TABLE OF CONTENTS</u>

I.     NATURE AND SUMMARY OF THE ACTION ........................................ 1

II.    JURISDICTION AND VENUE ................................................................ 4

III.   THE PARTIES ........................................................................................ 6

    A.  Plaintiff ......................................................................................... 6

    B.  Nominal Defendant ...................................................................... 6

    C.  Individual Defendants .................................................................. 6

IV.    SUBSTANTIVE ALLEGATIONS ......................................................... 9

    A.  Funko's Business Background ...................................................... 9

    B.  Funko's Obsolete Inventory And Sales Problems ..................... 10

    C.  The Individual Defendants Caused Funko To Make Improper Statements During the Relevant Period ....................... 11

        1.  The August 8, 2019 Improper Statements And Omissions ...... 12

        2.  The October 31, 2019 Improper Statements And Omissions ... 14

V.     REASONS THE INDIVIDUAL DEFENDANTS STATEMENTS WERE IMPROPER ................................................................................ 16

VI.    THE TRUTH EMERGES ...................................................................... 17

VII.   DEFENDANTS' IMPROPER INSIDER SELLING ............................. 20

VIII.  DUTIES OF THE INDIVIDUAL DEFENDANTS TO FUNKO ............... 21

    A.  The Individual Defendants' Fiduciary Duties ........................... 21

    B.  Additional Duties Of The Committee Defendants ..................... 23

    C.  Duties Pursuant To The Company's Code .................................. 26

    D.  Duties Pursuant To Corporate Governance Guidelines ............. 29

    E.  Control, Access, And Authority .................................................. 29

    F.  Reasonable And Prudent Supervision ........................................ 30

IX.    BREACHES OF DUTIES ...................................................................... 31

X.     CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION ................................................................................................ 35

XI.    DAMAGES TO FUNKO ...................................................................... 36

i

XII.  DERIVATIVE AND DEMAND ALLEGATIONS........................................38

    A.  Plaintiff's Demand Allegations.............................................38

    B.  The Board's Investigation Was Unreasonable Under Delaware Law And Its Refusal Of The Demand Was Not A Valid Exercise Of Business Judgment..........................................................43

XIII.  CLAIMS FOR RELIEF.........................................................46

        COUNT I...............................................................46

        COUNT II..............................................................47

        COUNT III.............................................................49

        COUNT IV.............................................................49

        COUNT V..............................................................50

        COUNT VI.............................................................50

        COUNT VII............................................................51

XIV.  PRAYER FOR RELIEF........................................................53

XV.  DEMAND FOR JURY TRIAL................................................55

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Grant Smith ("Plaintiff"), by his undersigned counsel, brings this shareholder derivative action on behalf of Nominal Defendant Funko, Inc. ("Funko" or the "Company") against certain current and former officers and directors of the Company for violations of law, including breaches of fiduciary duties, waste of corporate assets, unjust enrichment, misappropriation of material, non-public information, and for contribution for violations of the federal securities laws.  Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (i) review and analysis of public filings made by Funko and other related parties and non-parties with the U.S. Securities and Exchange Commission ("SEC"); (ii) review and analysis of press releases and other publications disseminated by the Company, certain of the defendants and other related non-parties; (iii) review of news articles, shareholder communications, and postings on Funko's website concerning the Company's public statements; (iv) publicly available pleadings, papers, and court documents, including any documents filed with and publicly available from the related pending securities fraud class action, *Ferreira v. Funko, Inc., et al.*, Case No. 2:20-cv-02319 (C.D. Cal.) (the "Securities Class Action"); and (v) review of other publicly available information concerning Funko, the Individual Defendants (defined below), and the Wrongful Refusal Defendants (defined below).

# I.    NATURE AND SUMMARY OF THE ACTION

1.    This is a shareholder derivative action brought by Plaintiff on behalf of Nominal Defendant Funko against certain of its officers and directors for breaches of fiduciary duties and other violations of law from August 2019 to the present (the "Relevant Period").  These wrongs resulted in hundreds of millions of dollars in damages to the Company's goodwill and business reputation.

2.    Funko is a pop culture consumer products company that creates vinyl figures, action toys, plush, accessories, apparel, and homewares relating to movies, TV shows, video games, musicians, and sports teams.  Funko is the world's largest seller

of pop culture collectibles and is best known for its Pop! line of vinyl collectible figures, which account for over three-quarters of the Company's sales.

3.     During the Relevant Period, the Individual Defendants (defined *infra*) made—and failed to correct—materially false and/or misleading statements to Funko shareholders and the public (*e.g.,* touting the Company's sales and growth in Securities and Exchange Commission ("SEC") filings and press releases) and failed to disclose important adverse facts about Funko's operations and financial forecast (e.g., concealing the Company's lower-than-expected sales and likely need to "write-down" slower moving inventory).

4.     By August 2019, the Company had amassed millions of dollars of obsolete inventory in various Funko warehouses due to the Company's haphazard internal sales forecasting practices.   Funko's excess inventory problem was so severe that the Company ran out of room in its warehouses and thus was forced to lease additional storage space in Puyallup, Washington.  Specifically, Funko had about 8-9 million units of obsolete inventory, worth approximately $10-11.25 million at cost.  This number grew to approximately 1-12 million units, worth $12.5-15 million by October 2019.

5.     Defendants concealed the true state of Funko's excess inventory situation from investors by misrepresenting that the accumulation of excess inventory was only a possible, future risk to its business, when in fact, that risk had already materialized. Indeed, Defendants did this while discussing the fact (on a regular basis is) that Funko had amassed millions of dollars of obsolete inventory.

6.     On October 31, 2019, Defendants also misled investors by confirming the Company's FY2019 guidance, projecting a 22% to 24% increase in sales.   By September 2019, Defendants knew Funko would be unable to meet the FY2019 earnings guidance, as there were not enough products tied to the fourth quarter releases and customer demand for the new fourth quarter products was insufficient to generate the sales necessary to meet the guidance.  Moreover, Funko could not make up the difference by selling its aged, excess inventory.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

7. On September 19, 2019, Defendants took advantage of Funko's inflated stock price and conducted a secondary offering (the "Offering"), consisting of personal shares sold by Defendant Mariotti and various entities affiliated with ACON Investments, L.L.C., including ACON Funko Investments, L.L.C. ("ACON"). Due to its three appointments to Funko's Board of Directors, ACON knew of the undisclosed details of Funko's inventory problems. All proceeds from the Offering – amounting to over $ 100 million – went to Defendant Mariotti and ACON. None of the proceeds from the Offering benefited the Company. Instead, all proceeds went to Defendant Mariotti and ACON, amounting to an over $100 million windfall.

8. During the same time period, Defendants Mariotti, Ken Brotman, Gino Dellomo, and Adam Kriger engaged in unlawful insider trades of Funko stock, thereby misappropriating the Company's non-public, confidential material information for their own benefit, causing harm to Funko.

9. Following these misrepresentations and concealments, on February 5, 2020, Funko revealed to the public a significant decrease in fourth quarter net sales compared to the preceding year from $233 million in the fourth quarter of 2018 to $214 million in fourth quarter of 2019 (or 8%). Adding to this stark drop in sales, the Company disclosed a $16.8 million-dollar write-down to dispose of slower moving inventory. The revelations of poor performance caused the Funko's stock price to fall from $15.49 per share on February 5, 2020, to $9.29 per share on February 6, 2020, representing an investor loss of 40%.

10. The news got worse, however. On March 5, 2020, Funko announced its fourth quarter and full year 2019 financial results. Therein, the Company affirmed that net sales for fourth quarter had decreased 4% year-over-year to $213.6 million. As a result, on March 6, 2020, the stock price fell again from $7.24 on March 5, 2020 to $6.92 on March 6, 2020 (an investor loss of about 5%). Valuations have continued to drop, as the stock was worth approximately $6.00 per share on September 4, 2020.

11. As a result of these false and misleading statements and omissions, along

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

with the misappropriation of material, non-public information, Funko suffered significant damages, including, without limitation, the costs and expenses of a securities fraud class action (and any potential settlement or judgment therefrom), the cost and expenses of compensation to derelict directors and officers in breach of their fiduciary duties, and a loss of credibility and market capitalization.

12. On October 21, 2020, Plaintiff issued a written demand (the "Demand") on Funko's board of directors (the "Board") to investigate and take the necessary legal action against those responsible for the damages the Company has sustained as a result of the wrongdoing detailed herein. Notwithstanding that over 18 months have passed since Plaintiff issued the Demand—and in total and patent contravention of Delaware law and the directors' fiduciary duties—the Board unreasonably and wrongfully refused to take any appropriate affirmative action.

13. The Board has failed to act independently, in good faith, and within the realm of sound business judgment in so doing.

14. In response to the Board's unreasonable and wrongful failure to respond to Plaintiff's Demand and disinterestedly and independently investigate and remediate harms caused to Funko, Plaintiff has filed this action alleging breaches of fiduciary duties, waste of corporate assets, unjust enrichment, misappropriation of material, non-public information, and for contribution for violations of the federal securities law. Because the Board's failure to respond to the Demand was improper and directly at odds with the Board's fiduciary duties, as detailed further herein, this derivative action should be permitted to proceed for the benefit of the Company and its shareholders.

## II.   JURISDICTION AND VENUE

15. This Court has jurisdiction over the claims asserted herein under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

16. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that in that this action states a federal question. Plaintiff has asserted a federal claim for contribution

derivatively on behalf of the Company, arising under Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4.  Pursuant to federal statutory law, this Court has original federal question jurisdiction over the federal contribution claim.

17.    The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

18.    This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

19.    This Court has personal jurisdiction over each defendant because each defendant is either a corporation conducting business and maintaining operations in this District or is an individual who is either present in this District for jurisdictional purposes or has, directly and indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets, such that each defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §§ 1391(b), (c), and (d).  Funko maintains offices in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.     THE PARTIES

### A.     Plaintiff

21.    Plaintiff Grant Smith has been a beneficial holder of Funko common stock since at least August 2018 and has continuously been a Funko shareholder since that time.

### B.     Nominal Defendant

22.    Funko is a Delaware corporation with its headquarters located in Everett, Washington.   Funko is a consumer products company that creates toys, apparel, accessories, and collectibles relating to the latest pop culture trends, including those based off of TV shows, movies, video games, sports teams, and music.   Funko is a "controlled company" within the meaning of the listing rules of NASDAQ, as Brian Mariotti, ACON, and Fundamental Capital, L.L.C. have more than 50% of the voting power for the election of directors to the Funko board of directors.   The Company trades on the NASDAQ under the ticker symbol "FNKO."

### C.     Individual Defendants

23.    Defendant Brian Mariotti ("Mariotti") has served as a director of Funko's Board since April 2017 and in addition, currently serves as Chief Creative Officer of the Company.   Mariotti has also served as CEO of Funko Holdings LLC ("FHL") since May 2013   and as CEO of Funko Acquisition Holdings, L.L.C. ("FAH") since October 2015.   Both FHL and FAH are holding companies with no assets.   FAH owns 100% of FHL, which in turn owns 100% of Funko, LLC, the Company's operating entity.   Mariotti received $4,025,457 and $2,627,245 in total compensation from the Company in 2019 and 2020, respectively.   Mariotti is a defendant in the Securities Class Action.   Mariotti is a citizen of Washington.

24.    Defendant Russell Nickel ("Nickel") served as the Chief Financial Officer ("CFO") of the Company from October 2013 to August 13, 2019.   Upon his resignation as CFO, Nickel served as a Special Advisor to the Company until December 31, 2019.   Nickel is a defendant in the Securities Class Action.   Nickel is a citizen of Washington.

25.  Defendant Jennifer Fall Jung ("Jung") has served as Funko's CFO since August 13, 2019.   Jung received $1,248,155 and $1,264,629 in total compensation from the Company in 2019 and 2020, respectively.  Jung is a defendant in the Securities Class Action.  Jung is a citizen of California.

26.  Defendant Andrew Perlmutter ("Perlmutter") has served as a member of Funko's Board since January 2022 and has served as Funko's Chief Executive Officer ("CEO") since January 3, 2022.  Prior being appointed as CEO, Perlmutter had served as the Company's President since October 2017.  Perlmutter received $1,450,482 in total compensation from the Company in 2020.   Perlmutter is a defendant in the Securities Class Action.  Perlmutter is a citizen of Illinois.

27.  Defendant Charles Denson ("Denson") is the current Chairman of Funko's Board, of which he has been a director since April 2017.  Denson has also served as a director of FAH since June 2016.  Denson is the Chairperson of the Compensation Committee and is a member of the Nominating and Corporate Governance Committee.  Denson had previously served on the Audit committee from November 2017 until January 2022.  Denson received $138,525 in total compensation from the Company in 2020.  Denson is a citizen of Oregon.

28.  Defendant Adam Kriger ("Kriger") has served as a director on Funko's Board since April 2017.  Kriger has also served as a director on the board of FAH since June 2016.  In addition, Kriger is an executive partner at ACON.  Kriger received $123,525 and $83,171 in total compensation from the Company in 2019 and 2020. Kriger is a defendant in the Securities Class Action.  Kriger is a citizen of Illinois.

29.  Defendant Ken Brotman ("Brotman") has served as a director of Funko's Board since April 2017.  Brotman has also been a director on the board of FAH since October 2015.  In addition, Brotman co-founded ACON in 1996, of which he is currently a managing partner.  Brotman is a member of the Compensation Committee. Brotman received $163,525 and $121,171 in total compensation from the Company in 2019 and 2020.  Brotman is a defendant in the Securities Class Action.  Brotman is a

citizen of Maryland.

30.    Defendant Michael Lunsford ("Lunsford") has served as a Funko director since October 2018.  Lunsford is the Chairperson of the Nominating and Corporate Governance Committee and is member of the Audit Committee.  Lunsford received $123,525 in total compensation from the Company in 2019.  Lunsford is a citizen of Washington.

31.    Defendant Diane Irvine ("Irvine") has served as a director on Funko's Board since April 2017.  Irvine has also been a director on the board of FAH since August 2017.  Irvine received $142,275 in total compensation from the Company in 2019.  Irvine is the Chairperson of the Audit Committee and is member of the Compensation Committee.  Irvine is a citizen of Washington.

32.    Defendant Sarah Kirshbaum Levy ("Levy") has served as a director of Funko since August 2019.  Levy received $78,737 and $104,921 in total compensation from the Company in 2019 and 2020, respectively.  Levy is a member of the Audit and Nominating and Corporate Governance Committees.  Levy is a citizen of New York.

33.    Defendant Gino Dellomo ("Dellomo") served as a director on Funko's Board from April 2017 until January 2022.  Dellomo has also served a director of ACON since October 2006 and as a director of FAH since October 2015.  Dellomo received $123,525 and $83,171 in total compensation from the Company in 2019 and 2020.  Dellomo is a defendant in the Securities Class Action.  Dellomo is a citizen of Virginia.

34.    Defendants identified in ¶¶23-33 above are referred to herein as the "Individual Defendants."

35.    Defendants identified in ¶¶27, 30-32 above are referred to herein as the "Audit Committee Defendants."

36.    Defendants identified in ¶¶23, 28-29, 33 above are referred to herein as the "Insider Selling Defendants."

37.    Defendants identified in ¶¶23, 26-33 above are referred to herein as the

"Wrongful Refusal Defendants."

38.     Defendants identified in ¶¶23-26, 28-29, 33 above are referred to herein as the "Officer Defendants" or "Securities Class Action Defendants."

## IV.     SUBSTANTIVE ALLEGATIONS

39.     Unbeknownst to investors, Funko had amassed millions of dollars of obsolete inventory as a result of its inability to properly forecast customer demand. During the summer of 2019, Funko had at least $10 million of obsolete inventory.  By October 2019, this number had risen by between 25 and 50%.  Funko's plan to deal with its inventory problem was to acquire a warehouse in Puyallup, Washington, where it would store obsolete inventory management eventually intended to destroy.

40.     The Officer Defendants were well aware of Funko's inventory problem, having routinely attended the Company's weekly sales meetings, where they regularly discussed the writing down of obsolete inventory.  Unfortunately, all attempts at fixing the obsolete inventory problem failed.  And worse, and in breach of their fiduciary duties and in violation of federal securities law, the Individual Defendants caused the Company to mislead investors and the public about the obsolete inventory problem and the Company's financial forecasts.  Eventually, the truth came to light, causing the Company's stock to tumble, a securities fraud class action, and other damages.

### A.     Funko's Business Background

41.     Founded in 1998, Funko is in the business of designing, creating, and selling pop culture consumer products.  The Company sells a highly collectible line of vinyl figures, known as Pop!, which comprises the majority of its sales.

42.     Defendant Mariotti, along with a group of investors, acquired Funko in 2005 and immediately began expanding the Company's licensing deals.

43.     In 2015, Funko was acquired by ACON Investments LLC ("ACON") – an international private equity investment firm registered in Delaware and based in Washington, D.C.

44.     In November 2017, Funko went public via an initial public offering

9

("IPO").    However, Funko is currently a "controlled company" pursuant to the NASDAQ listing rules, as Defendant Mariotti, ACON, and Fundamental Capital LLC, have more than 50% voting power for the election of members to the Company's Board.

45.    ACON owns several holding companies related to Funko, including both FHL and FAH.  FAH owns 100% of FHL, which in turn owns 100% of Funko, LLC, the Company's operating entity.

46.    The Company licenses with various content providers, such as Disney, Marvel, LucasFilsms, HBO, Warner Brothers, and the National Football League, and produces various collectible items based on the latest pop culture trends, including toys, apparel, and accessories.    These products are produced in conjunction with the contemporaneous release of pop culture media, including certain movies, television shows, video games, and sporting events.

47.    Moreover, the Company possesses a portfolio of "evergreen" content, such as Harry Potter, DC Comics, etc. that transcend fad status.

48.    Since at least 2018, only about 45% of Funko's sales account for its evergreen products while the majority are tied to the release and performance of media by content providers.  As such, the Company's sales are directly tied to the commercial success of these new releases, with 90% of its sales coming within the first three to four months after release.

**B.    Funko's Obsolete Inventory And Sales Problems**

49.    As a result of its inability to properly forecast customer demand, Funko had amassed millions of dollars of obsolete inventory.  Management hired a Director of Merchandise Planning in July 2019 to address the Company's internal forecasting problems.  By this time, Funko had at least $10 million of obsolete inventory.  By October 2019, Funko's inventory problem had grown by 25-50%.  During an August 2019 weekly sales meeting, management revealed that Funko acquired a warehouse in Puyallup, Washington to store obsolete products that the Company

planned to destroy.

50.   Defendants were well aware of Funko's obsolete inventory problem. Nickel, Jung and Perlmutter knew that Funko had millions of units of obsolete inventory that would not be sold since at least July 2019 through their attendance at weekly sales meetings.  During these meetings, the writing-down of obsolete inventory was routinely discussed.  Moreover, Nickel, Jung and Perlmutter also received regular reports starting in August and September 2019 that quantified Funko's obsolete inventory and projected inventory to be written down.  Funko's excess inventory problem was also discussed at Funko Board meetings attended by Mariotti, Nickel, Perlmutter, Brotman, Dellomo and Kriger, including a meeting that took place in late-June or early-July 2019 when Defendants discussed consolidating the obsolete inventory.  Mariotti was also advised of the inventory issues via emails summarizing each weekly sales meeting.

51.   Despite their knowledge of Funko's severe obsolete inventory problem, Defendants misleadingly portrayed the risk as only a potential risk.  By late-August or early-September 2019, Defendants also knew that Funko would be unable to achieve management's FY2019 guidance.  For example, Funko's customer orders in early-September 2019 showed a $30-40 million shortfall in sales.  This shortfall was discussed at weekly sales meetings, and the consensus of the meeting attendees was that the shortfall could not be remedied.  Jung and Mariotti knew of the shortfall based on participation in weekly sales meetings and their interaction with the Company's planning team.

**C.   The Individual Defendants Caused Funko To Make Improper Statements During the Relevant Period**

52.   The Individual Defendants *knew* Funko's inventory was obsolete and the problems it created, *knew* the quantified amount of Funko's obsolete inventory and projected inventory to be written down, and *knew* Funko's customer orders in early-September 2019 showed a $30-40 million shortfall in sales, which could not be fixed.

Nevertheless, despite their knowledge of Funko's severe obsolete inventory problem, Defendants misleadingly portrayed the risk-through SEC filings, press releases, and teleconferences.

### 1. The August 8, 2019 Improper Statements And Omissions

53. In an August 8, 2019, press release, Funko announced its financial results for the second fiscal quarter of 2019 ("the 2Q19 Press Release"). The 2Q19 Press Release represented the following as second quarter "highlights" for the Company:

- Net sales increased 38% to $191.2 million;

- Gross profit increased 35% to $71.2 million;

- Gross margin decreased 90 basis points to 37.2%;

- Income from operations increased 98% to $17.1 million;

- Net income increased to $11.4 million from $0.3 million;

- Earnings per diluted share increased to $0.16;

- Adjusted Net Income was $12.9 million compared to $3.2 million in the second quarter of 2018;

- Adjusted Earnings per Diluted Share was $0.25, compared to $0.06 in the second quarter of 2018; and

- Adjusted EBITDA increased 61% to $31.4 million.

54. In addition to reviewing Funko's performance in the second quarter, the 2Q19 Press Release went on to forecast the following for the year:

> The Company is raising its outlook for the full year 2019. The Company now expects net sales to be in a range of $840 million to $850 million. Adjusted EBITD is expected to be in a range of $140 million to $145 million. Adjusted Earnings per Diluted Share is expected to be in a range of $1.15 per share to $1.22 per share and is based on estimated adjusted average diluted shares outstanding of 53.5 million for the full year 2019.

> Adjusted EBITDA and Adjusted EPS are non-GAAP measures. A table at the end of this release reconciles Funko's outlook for the full year 2019. Adjusted EBITDA and Adjusted Earnings per Diluted Share guidance to the most directly comparable U.S. GAAP financial measures. Please refer to the "Non-GAAP Financial Measures" section of this press release.

55. Mariotti also provided his outlook and guidance for Funko's business operations and financials for the year. In the 2Q19 Press Release, he stated:

> Our strong results in the first half of 2019 have allowed us to increase our guidance for the full year. More importantly, the growing range of opportunities for revenue growth, international expansion and entry into new categories make us confident that our best days lie ahead, and that our fans, partners, employees and shareholders can look forward to the future.

56. During an earnings call with analysts on August 8, 2019, Mariotti repeated the claims contained in the press release, stating that:

> Considering that both Q1 and Q2 results exceeded our expectations, we are raising our full year guidance at this time. We now expect net sales of $840 million to $850 million, representing year-over-year growth of 22% to 24% compared to our prior guidance of $810 million to $825 million or 18% to 20% growth.

57. Moreover, Mariotti attributed the Company's decrease in its gross margin during the second quarter of 2019 to higher reserves taken for slower-moving inventory of some old lines as well as the higher Loungefly tariffs.

58. Mariotti further claimed it was because of the strength of the Company's products and content as the reason the Company increased its financial guidance figures on August 8, 2019, stating that "the content year as a whole" is extremely strong, that Funko had "2 big bullets left to fire with Frozen 2 and Star Wars: Episode IX," and that the Company had "so many different ways to monetize different properties for the second half of the year."

59. In addition to the press release and earnings call, on August 8, 2019, Funko also filed its quarterly report on Form 10-Q for the second quarter of 2019 with the SEC (the "2Q19 10-Q"), which Nickel signed. Mariotti and Nickel also certified accuracy of the financial statements and disclosures the report, pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX").

60. The 2Q19 10-Q mirrored the financial results contained in the 2Q19 Press Release. The SEC filing also provided the following related to Funko's inventory levels:

13

**Our success depends, in part, on our ability to successfully manage our inventories.**

We must maintain sufficient inventory levels to operate our business successfully, but we must also avoid accumulating excess inventory, which increases working capital needs and lowers gross margin. We obtain substantially all of our inventory from third-party manufacturers located outside the United States and must typically order products well in advance of the time these products will be offered for sale to our customers. As a result, it may be difficult to respond to changes in consumer preferences and market conditions, which, for pop culture products, can change rapidly. If we do not accurately anticipate the popularity of certain products, then we may not have sufficient inventory to meet demand. Alternatively, if demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

We may also be negatively affected by changes in retailers' inventory policies and practices. As a result of the desire of retailers to more closely manage inventory levels, there is a growing trend to make purchases on a "just-in-time" basis. This requires us to more closely anticipate demand and could require us to carry additional inventory. Policies and practices of individual retailers may adversely affect us as well, including those relating to access to and time on shelf space, price demands, payment terms and favoring the products of our competitors. Our retail customers make no binding long-term commitments to us regarding purchase volumes and make all purchases by delivering purchase orders. Any retailer can therefore freely reduce its overall purchase of our products, including the number and variety of our products that it carries, and reduce the shelf space allotted for our products. If demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

## 2.   The October 31, 2019 Improper Statements And Omissions

61.    In an October 31, 2019 press release, Funko announced its financial results for the third fiscal quarter of 2019 ("the 3Q19 Press Release"). The 3Q19 Press Release represented the following as second quarter "highlights" for the Company:

- Net sales increased 26% to $223.3 million;

- Gross profit increased 26% to $85.5 million;

- Gross margin decreased 10 basis points to 38.3%;

- Income from operations increased 36% to $22.6 million;

- Net income increased to $15.5 million from $7.6 million;

- Earnings per diluted share increased to $0.25;

- Adjusted Net Income was $19.9 million compared to $13.6 million in the third quarter of 2018;

- Adjusted Earnings per Diluted Share was $0.38, compared to $0.27 in the third quarter of 2018; and

- Adjusted EBITDA increased 20% to $40.6 million.

62.     Moreover, in the 3Q19 Press Release, the Company restated its outlook for the entire 2019 year:

> The Company expects net sales to be in a range of $840 million to $850 million. Adjusted EBITDA is expected to be in a range of $140 million to $145 million. Adjusted Earnings per Diluted Share is expected to be in a range of $1.15 per share to $1.22 per share and is based on estimated adjusted average diluted shares outstanding of 53.5 million for the full year 2019.

> Adjusted EBITDA and Adjusted EPS are non-GAAP measures. A table at the end of this release reconciles Funko's outlook for the full year 2019 Adjusted EBITDA and Adjusted Earnings per Diluted Share guidance to the most directly comparable U.S. GAAP financial measures. Please refer to the "Non-GAAP Financial Measures" section of this press release.

63.     During an earnings call with analysts on October 31, 2019, Jung repeated the claims from the press release while answering a question about the Company increasing its financial guidance after a strong third quarter.  Jung stated:

> I'll start with the guidance question. So coming out of Q2, the company re-guided to $840 million to $850 million on an annualized basis. And as you know, we do give annual guidance. We feel really good that to date, we've grown 28%, and for Q3, we're at 26%. But the range within that guidance is a little over 1%, so it's already a pretty tight spread there. As we look forward, though, as well, Q4, we are coming up against a very high Q4 last year, it was approaching 38% in a growth rate. And even with our current gui dance, Q4 will be our biggest quarter ever as a company.

> So we're feeling really good about where we are right now. And overall, you have to remember that a lot of the Frozen and Star Wars shipments did come into 3Q, and we did have that $3 million in FOB that also came into Q3. So although we're very positive on Q4, I think if you look at the 2-year stack, it's a very healthy build.

64.     In addition to the press release, Funko filed its quarterly report on Form 10-Q for the third quarter with the SEC (the "3Q19 10-Q") on October 31, 2019, which Jung signed.  Mariotti and Jung also certified the accuracy of the financial statements

15

and disclosures in the report, pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the SOX.

65.     Again, the 3Q19 10-Q mirrored the financial results contained in the 3Q19 Press Release and issued the following statements concerning Funko's inventory operations:

> **Our success depends, in part, on our ability to successfully manage our inventories.**
>
> We must maintain sufficient inventory levels to operate our business successfully, but we must also avoid accumulating excess inventory, which increases working capital needs and lowers gross margin. We obtain substantially all of our inventory from third-party manufacturers located outside the United States and must typically order products well in advance of the time these products will be offered for sale to our customers. As a result, it may be difficult to respond to changes in consumer preferences and market conditions, which, for pop culture products, can change rapidly. If we do not accurately anticipate the popularity of certain products, then we may not have sufficient inventory to meet demand. Alternatively, if demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.
>
> We may also be negatively affected by changes in retailers' inventory policies and practices. As a result of the desire of retailers to more closely manage inventory levels, there is a growing trend to make purchases on a "just-in-time" basis. This requires us to more closely anticipate demand and could require us to carry additional inventory. Policies and practices of individual retailers may adversely affect us as well, including those relating to access to and time on shelf space, price demands, payment terms and favoring the products of our competitors. Our retail customers make no binding long-term commitments to us regarding purchase volumes and make all purchases by delivering purchase orders. Any retailer can therefore freely reduce its overall purchase of our products, including the number and variety of our products that it carries, and reduce the shelf space allotted for our products. If demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

(Emphasis in original.)

## V.     REASONS THE INDIVIDUAL DEFENDANTS' STATEMENTS WERE IMPROPER

66.     The true facts, which were known or recklessly disregarded by the

Individual Defendants during the Relevant Period but concealed from the investing public, were as follows:

     a.    Funko's sales were significantly below its expectations;

     b.    as a result, the Company would inevitably be required to write-down millions of dollars in losses in order to dispose of slow moving inventory; and

     c.    as a result of the foregoing, the Funko's public statements were materially false and misleading at all relevant times.

67.    The foregoing improper statements were material to a reasonable investor because they misstatements and omission forecasts would alter the total mix of information available.  First Funko's core business is the sale of pop culture-related products and thus the forecasts and backlog of unsold inventory related to the core of Funko's operations and profit potential.  Moreover, Funko's misstatements and omissions ultimately hid a failure to meet analysts' consensus expectations.  A February 5, 2020 *Market Watch* article noted that "Funko stock plummet[ed] on [a] surprise sales downturn."  Also, a Motley Fool article explained that "Funko stock is being mauled today" because of "horrendous results", including the fact that "[s]ales in the U.S. and international markets are expected to decline by 9% and 8%, respectively."

68.    As a result of the Individual Defendants' false and misleading statements and omissions, Funko shares traded at artificially-inflated prices during the Relevant Period.  Once the true facts regarding the Company's financial prospects and future business prospects began to emerge, the Company's stock price fell dramatically, erasing hundreds of millions of dollars market capitalization.

## VI.    **THE TRUTH EMERGES**

69.    On February 5, 2020, Funko issued a press release announcing the Company's preliminary financial results for the fourth quarter of 2019 ("the 4Q19 Press Release"), which included the following generally disappointing financial results

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

and operations:

Net sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018. Net sales were below expectations in mature markets, including the U.S., due to the challenging retail environment, which resulted in lower than expected purchases among Funko's top customers throughout the holiday season as well as softness in sales related to certain tentpole movie releases. These factors more than offset strong growth both in Europe and the Loungefly brand during the quarter.

For the fourth quarter of fiscal 2019, Funko estimates:

- Net sales in the U.S. will decrease approximately 9%, while net sales internationally will decrease approximately 8%, reflecting declines in mature international markets, including Australia and Canada, partially offset by continued double digit growth in Europe.

- On a product category basis, net sales of figures will decrease approximately 10% and net sales of other products will decrease approximately 3% versus the year ago period, respectively. Net sales of Loungefly items, included in other products, are expected to show continued double-digit growth in the fourth quarter offset by declines in other branded products.

- The Company will incur a one-time $16.8 million charge related to the write-down of inventory as a result of the Company's decision to dispose of slower moving inventory to increase operational capacity. This charge is incremental to normal course reserves and will have an unfavorable impact to gross profit, gross margin, net loss and net loss per diluted share in the fourth quarter.

- Gross profit will be in the range of $62.3 million to $62.8 million, while gross margin1 will be 29.2% to 29.4%. Gross margin excluding the one-time inventory write-down will be 37.0% to 37.3%.

- The Company will have a net loss in the range of $6.7 million to $6.0 million and net loss per diluted share of $0.12 to $0.11.

- Adjusted EBITDA will be in the range of $24.7 million to $25.7 million.

- Adjusted Net Income will be in the range of $8.1 million to $8.9 million and Adjusted Earnings per Diluted Share will be in the range of $0.16 to $0.18.

70.     The 4Q19 Press Release further revealed that Funko did not expect sales to improve until the second half of the year, stating:

The Company expects its 2020 net sales growth rate to be in the high-single digits to low-double-digits. Additionally, the Company anticipates that top line trends will improve gradually throughout 2020 and will be largely

weighted toward the second half of the year, with net sales in the first half expected to be down low-single-digits to flat compared to the first half of 2019. Funko plans to provide expanded guidance for 2020 in connection with the release of fourth quarter and full year 2019 financial results on March 5, 2020.

Mr. Mariotti expressed his disappointment in the press release, stating:

While we are disappointed in our fourth quarter results, we are confident that our strong track record of innovation through new product categories and properties, as well as continued international expansion, will continue to propel the Company in 2020 and beyond. The underlying strength of our Pop! and Loungefly brands, combined with Funko's unique ability to leverage evergreen properties will enable the Company to achieve high-single-digit to low-double-digit sales growth in 2020.

71.    Following the February 5, 2020 press release, Funko's stock price plunged from $15.49 to $9.29 per share at the close of trading on February 6, 2020, a loss of roughly 40.00%.

72.    On March 5, 2020, Funko confirmed its disappointing numbers for the fourth quarter and entire year of 2019.  The Company stated its declining sales were due to, among other things, "softness at retail during the holiday season which led to a decrease in orders," stating the following:

Net sales decreased 8% to $213.6 million in the fourth quarter of 2019 compared to $233.2 million in the fourth quarter of 2018. The year-over year decline was primarily driven by underperformance in more mature markets, including the U.S., Australia and Canada, and reflects three primary factors: softness at retail during the holiday season which led to a decrease in orders, underperformance in key tentpole properties, and difficult comparisons from the year ago period due to the strength of Fortnite which generated 12% of sales in the fourth quarter of 2018.

In the fourth quarter of 2019, the number of active properties increased 14% to 667 from 583 in the fourth quarter of 2018 and net sales per active property decreased 20%. On a geographical basis, net sales in the United States decreased 9% to $144.9 million and net sales internationally decreased 8% to $68.6 million due to declines in Australia and Canada, partially offset by strong growth in Europe. On a product category basis, net sales of figures decreased 10% to $170.2 million reflecting the overall softness at retail in the quarter. Net sales of other products decreased 3% to $43.3 million versus the fourth quarter of 2018, which reflects decreased sales in plush and accessories, partially offset by double digit growth in our Loungefly brand.

(Emphasis added.)

73.    After the confirming March 5, 2020 press release, the price fell again,

from $7.24 per to $6.92 per share, a loss of another 4.00%.

## VII.   DEFENDANTS' IMPROPER INSIDER SELLING

74.   Not all of the Company's shareholders were harmed by the Individual Defendants' misconduct.  During the Relevant Period, while in possession of material, adverse, non-public information, certain of the Individual Defendants unloaded their holdings of Funko stock at bloated prices.  Defendants rushed to conduct the Offering while Funko's stock was trading at or near its peak stock price.   On September 19, 2019, Defendant Mariotti and ACON sold over $101 million in stock in the Offering –  the largest sale ever for Mariotti and the only sale for ACON.  These sales took place shortly before Defendants announced on October 31, 2019, that Funko was maintaining its FY2019 guidance – an announcement Defendants knew the market would react negatively to since the market expected Funko to increase its guidance.  However, the reconfirmed guidance was itself misleading because Jung confirmed the guidance with full knowledge and agreement that Funko's internal sales projections did not support it.

75.   Specifically, the Insider Selling Defendants took advantage of the artificially-inflated prices to sell their Funko shares for **_over $100 million_** in proceeds:

**Mariotti**

| Date | Number of Shares | Price | Proceeds |
|---|---|---|---|
| 9/19/19 | 400,000 | $25.42 | $10,168,000 |
| 9/20/19 | 50,000 | $22.69 | $1,134,500 |
| | | Total | $11,302,542 |

**ACON**

| Date | Number of Shares | Price | Proceeds |
|---|---|---|---|
| 9/19/19 | 3,600,000 | $25.42 | $91,512,000 |

76.     Mariotti, as well as Brotman, Dellomo, and Kriger through their positions at ACON, realized over $100 million in proceeds by means of their insider sales during the Relevant Period, when the Company's stock price was artificially inflated due to the false and misleading statements described herein.

## VIII.  DUTIES OF THE INDIVIDUAL DEFENDANTS TO FUNKO

### A.     The Individual Defendants' Fiduciary Duties

77.     By reason of their positions as officers, directors and/or fiduciaries of Funko, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed and owe, the Company and its shareholders the fiduciary duties of care and loyalty, including the subsidiary duties of good faith, oversight, and disclosure, and were, and are, required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were, and are, required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally, and not in furtherance of their personal interest or benefit.

78.     Each director and officer of the Company owed, and owes, to Funko and its shareholders the fiduciary duties of due care, loyalty and good faith in the administration of the affairs of the Company and in the use and preservation of its property and assets.  The duty of care requires informed, deliberative decision-making based on all material information reasonably available.  The duty of loyalty requires acting (including deciding not to act) on a disinterested and independent basis, in good faith, with an honest belief that the action is in the best interests of the Company and its shareholders.

79.     Each director and officer of the Company is required to act in furtherance of the best interests of Funko and its shareholders to benefit all of the Company's shareholders equally, and not in furtherance of their personal interest or benefit.

80.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Funko, were able to, and did, directly and

indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Individual Defendants had knowledge of material, non-public information regarding the Company.  As senior officers and directors of a publicly held company whose stock was registered with the SEC under the Exchange Act and publicly traded, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's financial and business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

81.    At all times relevant hereto, the Individual Defendants were the agents of each other and of the Company and were at all times acting within the course and scope of such agency.  Each of the Individual Defendants' conduct – who were officers and directors of the Company – was ratified by the remaining Individual Defendants who collectively comprised the Company's board of directors at all relevant times herein.

82.    To discharge their fiduciary duties, the officers and directors of Funko were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

  a.    exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner, so as to make it possible to provide the highest quality performance of their business;

  b.    exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner, and in compliance with all applicable federal and state laws, rules, regulations, and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

c.    when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence;

d.    remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

e.    establish and maintain systematic and accurate records and reports of the business and internal affairs of the Company and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

f.    exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

g.    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

h.    examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

**B.**    **Additional Duties Of The Committee Defendants**

83.    In addition to the foregoing duties, the committee members of the Board are tasked with specific duties. Denson, Irvine, Levy, and Lunsford served on Funko's Audit Committee (the "Audit Committee Defendants"). The Audit Committee's primary functions include, without limitation, assisting the Board in fulfilling its

oversight responsibilities relating to the Company's financial accounting, reporting, compliance, and internal controls.  Pursuant to their committee charter (the "Charter"), the Audit Committee Defendants owe and owed specific duties to Funko, including, without limitation, to:

*Annual Financial Statements and Annual Audit*

3.    *Audit Problems*. The Committee must discuss with the independent auditor any audit problems or difficulties and management's response.

4.    *Form 10-K Review*. The Committee must review and discuss the annual audited financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

5.    *Audit Committee Report*. The Committee must provide the Company with the report of the Committee with respect to the audited financial statements for inclusion in each of the Company's annual proxy statements.

*Quarterly Financial Statements*

6.    *Form 10-Q Review*.  The Committee must review and discuss the quarterly financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

*Other Duties and Responsibilities*

7.    *Review of Earnings Releases*. The Committee should discuss the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies.

8.    *Risk Assessment and Risk Management*. The Committee must discuss the Company's policies with respect to risk assessment and risk management.

9.    *Review of Related Person Transactions*. The Committee must review all related person transactions as defined by Item 404 of Regulation S-K on an ongoing basis and all such transactions must be approved or ratified by the Committee.

10.   *Review of Code of Ethics*. The Committee must periodically consider and discuss with management and the independent auditor the Company's code of ethics and the procedures in place to enforce the code of ethics. The Committee must also consider and discuss and, as appropriate, grant requested waivers from the code of ethics brought to the attention of the Committee, though the Committee may defer any decision with respect to any waiver to the Board.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

11.    *Hiring of Independent Auditor Employees*. The Committee must set clear hiring policies for employees or former employees of the Company's independent auditor.

12.    *Complaint Procedures*. The Committee must establish procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and for the confidential and anonymous submission by Company employees of concerns regarding questionable accounting or auditing matters.

13.    *Reports to the Board of Directors*. The Committee must report regularly to the Board regarding the activities of the Committee.

14.    *Committee Self-Evaluation*. The Committee must periodically perform an evaluation of the performance of the Committee.

15.    *Review of this Charter*. The Committee must annually review and reassess this Charter and submit any recommended changes to the Board for its consideration.

84.    Upon information and belief, the Company maintained versions of the Audit Committee Charter during the Relevant Period that imposed the same, or substantially and materially the same or similar duties on the Audit Committee Defendants.

85.    Irvine, Brotman, and Denson serve on Funko's Compensation Committee (collectively, the "Compensation Committee Defendants").    The Committee Committee's primary functions include, without limitation, overseeing the Company's policies with respect to the compensation of the Company's board members and officers.    Pursuant to their committee charter, the Compensation Committee Defendants, owed and owe specific duties to Funko, including, without limitation, to:

a.    review the Company's compensation strategy;

b.    review and approve compensation of officers;

c.    evaluate and recommend the compensation of the CEO; and

d.    review officer stock ownership guidelines.

86.    Defendants Levy, Lunsford, and Denson serve on Funko's Nominating and Corporate Governance Committee (collectively, the "Nominating and Corporate Governance Committee Defendants").    The Nominating and Corporate Governance

Committee's primary functions include, without limitation, developing and recommending corporate governance guidelines and policies; overseeing the evaluation of the Board and each committee of the Board; and advising the Board on corporate governance matters and federal securities laws matters. Pursuant to their committee charter, the Nominating and Corporate Governance Committee Defendants, owed and owe specific duties to Funko, including, without limitation, to:

      a.     review the adequacy of the Funko Code;

      b.     consider the Board's leadership structure;

      c.     consider procedures for stockholder communications; and

      d.     oversee the process for evaluation of the performance of the Board.

## C.    Duties Pursuant To The Company's Code

87.    The Individual Defendants, as officers and/or directors of Funko, were also bound by the Company's Code of Conduct and Ethics (the "Code") which sets out basic principles to guide all directors, officers, and employees of the Company, who are required to know and conduct themselves in accordance therewith, as well as applicable laws and regulations, and to avoid the appearance of improper behavior.

88.    In addition to federal securities law requirements and their fiduciary duties to the Company's shareholders, Funko's directors and officers are subject to the Code, which provides that:

> This Code of Business Conduct and Ethics (the "***Code***") contains general guidelines for conducting the business of Funko, Inc. (the "***Company***" or "***we***") consistent with the highest standards of business ethics. To the extent this Code requires a higher standard than required by commercial practice or applicable laws, rules or regulations, the Company adheres to these higher standards.

> This Code applies to all of our directors, officers and other employees. We refer to all officers and other employees covered by this Code as "Company employees" or simply "employees," unless the context otherwise requires. In this Code, we refer to our principal executive officer, principal financial officer, principal accounting officer and controller, or persons performing similar functions, as our "principal financial officers."

Specifically, the Code requires:

**VII. COMPANY RECORDS**

26

Accurate and reliable records are crucial to our business. Our records are the basis of our earnings statements, financial reports, regulatory submissions and many other aspects of our business and guide our business decision-making and strategic planning. Company records include financial records, personnel records, records relating to our technology, products and product development, customer collaborations, manufacturing and regulatory submissions and all other records maintained in the ordinary course of our business.

All Company records must be complete, accurate and reliable in all material respects. Each employee and director must follow any formal document retention policy of the Company with respect to Company records within such employee's or director's control. Please contact your supervisor or the Company's General Counsel to obtain a copy of any such policy or with any questions concerning any such policy.

\*     \*     \*

## IX.   ACCURACY OF FINANCIAL REPORTS AND OTHER PUBLIC COMMUNICATIONS

As a public company we are subject to various securities laws, regulations and reporting obligations. Both federal law and our policies require the disclosure of accurate and complete information regarding the Company's business, financial condition and results of operations. Inaccurate, incomplete or untimely reporting will not be tolerated and can severely damage the Company and result in legal liability.

The Company's principal financial officers and other employees working in the finance department have a special responsibility to ensure that all of our financial disclosures are full, fair, accurate, timely and understandable. These employees must understand and strictly comply with generally accepted accounting principles and all standards, laws and regulations for accounting and financial reporting of transactions, estimates and forecasts.

## X. COMPLIANCE WITH LAWS AND REGULATIONS

Each employee and director has an obligation to comply with all laws, rules and regulations applicable to the Company's operations. These include, without limitation, laws covering bribery and kickbacks, the development, manufacture, marketing and sale of our products, copyrights, trademarks and trade secrets, information privacy, insider trading, illegal political contributions, antitrust prohibitions, foreign corrupt practices, offering or receiving gratuities, environmental hazards, employment discrimination or harassment, occupational health and safety, false or misleading financial information or misuse of corporate assets. You are expected to understand and comply with all laws, rules and regulations that apply to your job position. If any doubt exists about whether a course of action is lawful, you should seek advice from your supervisor or the Company's General Counsel.

\*     \*     \*

D. Compliance with Insider Trading Laws

Consistent with the Company's Insider Trading Compliance Policy, the Company's employees and directors are prohibited from trading in the stock or other securities of the Company while in possession of material nonpublic information about the Company. In addition, Company employees and directors are prohibited from recommending, "tipping" or suggesting that anyone else buy or sell the Company's stock or other securities on the basis of material non-public information. Employees and directors who obtain material non-public information about another company in the course of their duties are prohibited from trading in the stock or securities of the other company while in possession of such information or "tipping" others to trade on the basis of such information. Violation of insider trading laws can result in severe fines and criminal penalties, as well as disciplinary action by the Company, up to and including, for an employee, termination of employment or, for a director, a request that such director resign from the Board of Directors. You are required to read carefully and observe our Insider Trading Compliance Policy, as amended from time to time. Please contact the Company's General Counsel for a copy of the Insider Trading Compliance Policy or with any questions you may have about insider trading laws.

E. Public Communications and Regulation FD

1.    Public Communications Generally

The Company places a high value on its credibility and reputation in the community. What is written or said about the Company in the news media and investment community directly impacts our reputation, positively or negatively. Our policy is to provide timely, accurate and complete information in response to public requests (from media, analysts, etc.), consistent with our obligations to maintain the confidentiality of competitive and proprietary information and to prevent selective disclosure of market-sensitive financial data. The Company has adopted a separate Policy Regarding Communications with Analysts, Securityholders and Others to maintain the Company's credibility and reputation in the community, to maintain the confidentiality of competitive and proprietary information and to prevent selective disclosure of market-sensitive financial data.

2.    Compliance with Regulation FD

In connection with its public communications, the Company is required to comply with a rule under the federal securities laws referred to as Regulation FD (which stands for "fair disclosure"). Regulation FD provides that, when we disclose material non-public information about the Company to securities market professionals or stockholders (where it is reasonably foreseeable that the stockholders will trade on the information), we must also disclose the information to the public. "Securities market professionals" generally include analysts, institutional investors and other investment advisors.

The Company has designated certain individuals as "spokespersons" who are responsible for communicating with analysts, institutional investors and representatives of the media. Any employee or director who is not a designated spokesperson of the Company is prohibited from

communicating any information about the Company to analysts, institutional investors or representatives of the media.

For more information on the Company's policies and procedures regarding public communications and compliance with Regulation FD, please contact the Company's General Counsel for a copy of the Company's Policy Regarding Communications with Analysts, Securityholders and Others or with any questions you may have about disclosure matters.

89.     Upon information and belief, the Company maintained versions of the Code during the Relevant Period that imposed the same, or substantially and materially the same or similar duties on, among others, the Individual Defendants.

### D.     Duties Pursuant To Corporate Governance Guidelines

90.     The Individual Defendants, as directors of Funko, were also bound by the Company's Corporate Governance Guidelines (the "Guidelines") which sets out basic principles to "assist the Board in the exercise of its responsibilities and to serve the interests of the Company and its stockholders."  The Guidelines state:

Director Responsibilities

The business and affairs of the Company will be managed by or under the direction of the Board, including through one or more of its committees. Each director is expected to spend the time and effort necessary to properly discharge his or her responsibilities. These include:

- exercising their business judgment in good faith;

- acting in what they reasonably believe to be the best interest of all stockholders;

- becoming and remaining well-informed about the Company's business and operations and general business and economic trends affecting the Company; and

- ensuring that the business of the Company is conducted so as to further the long-term interests of its stockholders.

### E.     Control, Access, And Authority

91.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Funko, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

92.     Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of the Company.

93.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of the Company and was at all times acting within the course and scope of such agency.

**F.     Reasonable And Prudent Supervision**

94.     To discharge their duties, the officers and directors of Funko were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

a.     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

b.     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest-quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c.     properly and accurately guide shareholders and analysts as to the true financial and business prospects, operations, and financial prospects of the Company at any given time, including making accurate statements about the Company's business practices, operations, and financial prospects, as well as its internal controls;

d.     remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

therewith, and take steps to correct such conditions or practices, and make such disclosures as necessary to comply with securities laws;

e.   refrain from trading on material, adverse, non-public information; and

f.   ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## IX.   **BREACHES OF DUTIES**

95.   The conduct of the Individual Defendants complained of herein involves knowing and culpable violations of their obligations as officers and/or directors of Funko, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders, which the Individual Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

96.   The Individual Defendants breached their duties of loyalty and good faith by allowing the other Individual Defendants to deceive, or by themselves deceiving, the investing public and artificially inflating and maintaining the market price of the Company's securities by making, or causing to be made, untrue statements and omissions about Funko's business, operational, and compliance policies, including concealing the fact that the Company was unable to effectively manage its inventory, which was excessive and largely obsolete; and affirming the Company's fiscal year 2019 guidance, which they knew Funko could not meet.

97.   As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

98.   The Individual Defendants also violated, or failed to prevent others from violating, federal securities laws, which have resulted in, and exposed the Company to the Securities Class Action.  As a result of these and other breaches of fiduciary duties, the Company has expended, and will continue to expend, significant sums of money.

99.   Thus, the Individual Defendants, because of their positions of control and

authority as officers and/or directors of the Company, were able to, and did, directly, and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company, which resulted in substantial harm to the Company.

100.   Specifically, as members of the Audit Committee, the Audit Committee Defendants breached their fiduciary duties of good faith and loyalty by, *inter alia*, failing to implement sufficient internal controls and procedures and/or recklessly and indifferently failing to follow internal controls and procedures to ensure the accuracy of the Company's public statements.  Because of this failure, the Company issued false and misleading statements concerning the Company's business practices, operations, and financial prospects.

101.   As a result of this misconduct, Funko shareholders initiated a securities fraud class actions against the Company, its officers and directors, and related entities, *e.g.,* Funko's various holding companies: *Ferreira v. Funko, Inc., et al.*, Case No. 2:20-cv-02319-VAP-PJWx (C.D. Cal.) ("Securities Class Action").  On July 31, 2020, plaintiffs filed an amended consolidated complaint.  The Securities Class Action brings claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, alleging, *inter alia*, the Securities Class Action Defendants deceived the investing public by causing them to purchase Funko stock at artificially inflated prices, and the officers were then controlling persons of the Company.  On March 29, 2021, the plaintiffs filed a Consolidated Second Amended Class Action Complaint ("SAC") for Violations of the Federal Securities Laws.  ECF No. 142.

102.   On May 7, 2021, two groups of defendants filed two motions to dismiss the SAC; the first group consisting of defendants Funko Inc., Brian Mariotti, Russell Nickel, Andrew Perlmutter, Jennifer Fall Jung, Ken Brotman, Gino Dellomo, and Adam Kriger (the "Funko Defendants") and the second group consisting of defendants ACON Investments, LLC, ACON Funko Manager, LLC, ACON Funko Investors, LLC, ACON Funko Investors Holdings 1, LLC, ACON Funko Investors Holdings 2,

LLC, ACON Funko Investors Holdings 3, LLC, and ACON Equity GenPar, LLC ( the "ACON Defendants"). ECF Nos. 149, 151. However, on October 22, 2021, the United States District Court Judge Virginia A. Phillips denied the motion in part, finding: the SAC's Section 10(b) and Rule 10b-5 claim is actionable regarding statement no. 2, which discusses Funko's inventory risk warnings. Statement no. 2 was contained in Funko's Form 10-Q filed with the SEC on October 31, 2019 (the "2019 3Q10Q"); the SAC's Section 20(a) claim is actionable against Mariotti, Jung, Funko, and the ACON Defendants, and the SAC's 20A claim against Mariotti is actionable.

103. The Court found that statement no. 2, which identical to statement no. 1 but repeated at a later date in the 2019 3Q10Q was actionable because "the SAC alleges specific facts as to: the amount and value of Funko's excess and obsolete inventory at the time statement no. 2 was issued; the receipt by Defendants Jung, Perlmutter, and Mariotti of written reports (i.e., the aged inventory report and the Open to Buy plan) documenting the issue on a weekly basis over the course of several months leading up to the issuance of statement no. 2; and the lengthy discussions about the reports during several weekly sales meetings Defendant Jung and Perlmutter attended and in which they participated, and of which Defendant Mariotti was aware as he received emails summarizing each meeting[.]"

104. Moreover, the Court found that although statement no. 2 was forward-looking, it "was made with actual knowledge of its falsity" and there is "a strong inference that Defendants Jung, Perlmutter, and Mariotti knew about the excess and obsolete inventory problem and concealed it when Funko issued the Form 10-Q containing statement no. 2 on October 31, 2019."

105. The Court also found that the SAC sufficiently alleges Section 20(a) claims against Mariotti, Jung, Funko, and ACON defendants, finding that "the SAC alleges the ACON Defendants not only owned a significant portion of stock in Funko (45.7%) when statement no. 2 was made but also were Funko's controlling shareholders who placed Defendants Brotman, Dellomo, and Kriger on the Funko

Board, each of whom was a member of the Funko Board when statement no. 2 was made. Plaintiffs' allegations sufficiently show the ACON Defendants were control persons of Funko when it issued the October 31, 2019 Form 10-Q, containing statement no. 2."

106. Finally, the Court denied the defendants' motion to dismiss regarding the SAC's Section 20A claim against Mariotti, finding that the SAC "stated a primary section 10(b) claim against [Mariotti] with respect to statement no. 2" and rejecting the defendants' argument in the Funko MTD that "there was no primary violation."

107. In denying in part the motion to dismiss, the Court rejected defendants' arguments that the 2019 3Q10Q statements were non-actionable, forward-looking, and that the statements lacked materiality. The Court determined that the SAC sufficiently alleges materially false and misleading statements related to Funko's excess and obsolete inventory.

108. In denying in part the motion to dismiss, the Court further found the SAC links the defendants' representations about Funko's excessive and obsolete inventory levels with their knowledge that these representations were false. For example, the SAC alleges that From August 2019 through the issuance of the 2019 3Q10Q, Funko held weekly sales meetings that addressed concerns about the Company's excess inventory, and these meetings were accompanied by reports detailing "exactly what inventory Funko held, including how much was obsolete and slated for destruction, as well as its monetary value." Because Jung and Perlmutter attended these meetings, and Mariotti received emails summarizing each meeting, they were aware that the statements made in the 2019 Q310Q were false at the time of its filing and these statements are actionable.

109. Given the heightened pleading standards applicable to the Securities Class Action, namely Fed. R. Civ. 9(b) and the Private Securities Litigation Reform Act (15 U.S.C. § 78u-4), and given the Securities Class Action survived, at least in part, defendants' motion to dismiss, there is a high degree of certainty that defendants Jung,

Perlmutter, Mariotti, will face significant liability for their misconduct.  Consequently, Funko has expended, and will continue to expend, significant sums of money to rectify the wrongdoing detailed herein.

110.   The Individual Defendants breached their fiduciary duties of care and loyalty by causing the Company to issue materially misleading SEC filings and failing to adhere to Company's Code of Conduct and committee charters, resulting in harm to Funko.  The Individual Defendants' breaches further damaged Funko by exposing the Company to liability in the Securities Class Action, including significant defense costs. These breaches of fiduciary duty are not insulated from liability under the business judgment rule.  And, while the directors may attempt exculpation from breach of fiduciary duties in the governing documents, the officers are not exculpated.

111.   The Individual Defendants further breached their fiduciary duties because they failed to maintain a proper system of oversight, controls, and procedures.

112.   To date, the Board has not taken remedial action against the Individual Defendants.  Instead, the Company has funded the Individual Defendants' defense of the Securities Class Action filed against them by Funko stockholders.  Accordingly, Stockholder brings this action against the Individual Defendants seeking monetary damages.

## X.   CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

113.   In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with, and conspired with, one another in furtherance of their wrongdoing. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

114.   During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that the Company's business and financial prospects were better than

they actually were.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

115.   The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duties, corporate waste, unjust enrichment and violations of the federal securities laws; and (b) disguise and misrepresent the Company's actual business and financial prospects.

116.   The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

117.   Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## XI.   DAMAGES TO FUNKO

118.   As a result of the Individual Defendants' wrongful conduct, Funko conducted its affairs in evident violation of federal and state laws and regulations. Moreover, the Company was caused to disseminated false and misleading statements, and omitted material information to make such statements not false and misleading when made.  This misconduct has devastated the Company's credibility.  The Company is the subject of the Securities Class Action.  Funko has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

119.   As a direct and proximate result of the Individual Defendants' actions as

36

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

alleged above, the Company's market capitalization has been substantially damaged as a result of the conduct described herein.

120.   Further, as a direct and proximate result of the Individual Defendants' conduct, the Company has expended, and will continue to expend, significant sums of money.  Such expenditures include, without limitation:

a.   costs incurred in connection with being named a defendant in the Securities Class Action, including the defense and settlement of or judgment in the litigation, as well as any other related litigation based on the same facts;

b.   costs incurred in connection with the lavish and unjustified compensation and benefits paid to management while they were actively breaching their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives, which was based, at least in part, on the Company's artificially-inflated stock price;

c.   costs incurred in connection with the Insider Selling Defendants' misappropriation of Company information in connection with their unlawful insider sales;

d.   costs incurred from the loss of the Company's customers' confidence in Funko and its products and services; and

e.   Costs associated with the reputational harm suffered by Funko as a result of the misconduct detailed herein, including loss of goodwill, increased borrowing costs, and loss of market capitalization and the resulting impact on the Company's ability to access the capital markets to raise money.

121.   Moreover, these actions have irreparably damaged the Company's corporate image and goodwill.  For at least the foreseeable future, Funko will suffer from what is known as the "liar's discount," a term applied to the stocks of companies

who have been implicated in illegal behavior and have misled the investing public, such that the Company's ability to raise equity capital or debt on favorable terms in the future is now impaired.

122. Finally, the Company has also suffered severe losses in market capitalization as a direct result of the Individual Defendants' wrongdoing alleged herein.

## XII.   DERIVATIVE AND DEMAND ALLEGATIONS

123.   Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

124.   Plaintiff brings this action derivatively, in the right and for the benefit of Funko, to redress injuries suffered, and to be suffered, by the Company as a direct result of the Individual Defendants' breaches of fiduciary duties and other violations of law. Funko is named as a nominal defendant solely in a derivative capacity.

125.   Plaintiff will adequately and fairly represent the interests of Funko in enforcing and prosecuting its rights.

126.   Plaintiff is, and has continuously been, a Funko shareholder since prior to the start of the Relevant Period, and has been a shareholder at all relevant times, including at the time of the Individual Defendants' and Wrongful Refusal Defendants wrongdoing complained of herein.

127.   As detailed below, Plaintiff's pre-suit Demand has been wrongfully ignored by the Board, forcing Plaintiff to file this shareholder derivative action on behalf of the Company.

128.   Given the Board's wrongful, bad-faith, and unreasonable failure to respond to Plaintiff's lawful Demand to sufficiently investigate the misconduct, and/or to take sufficient action to remedy the harms caused to the Company, this shareholder derivative action should be permitted to proceed.

### A.   Plaintiff's Demand Allegations

129.   Plaintiff made his formal demand for litigation (the "Demand") on

October 21, 2020, where he demanded that the Board: (i) undertake (or cause to be undertaken) an independent internal investigation into Individual Defendants' violations of Delaware and federal law; and (ii) commence a civil action against Individual Defendants (and any others who may be similarly liable for breach of fiduciary duty of care, breach of fiduciary duty of loyalty, aiding and abetting breaches of fiduciary duties, contribution, and indemnification against Individual Defendants) to recover for the benefit of the Company the amount of damages sustained by the Company as a result of their breaches of fiduciary duties alleged herein, as well as take additional affirmative action to redress the wrongs described herein and prevent such wrongdoing from occurring again in the future.  A true and correct copy of the Demand is attached hereto as **Exhibit A**.

130.   The Demand described how the Individual Defendants have violated the core fiduciary duty principles described herein during the Relevant Period through their wrongful conduct described above in the Securities Class Action.  To redress these wrongs and prevent such wrongdoing from occurring again in the future, Plaintiff demanded:

a.   The Board should require that the Executives and Directors, and any other persons or entities, account to the Company for all damages sustained, or to be sustained, by the Company by reason of the wrongs and misconduct complained of herein.

b.   The Board should make certain that no Company funds are used towards any settlement or resolution of the Securities Class Action, among any other related litigation.

c.   The Board should require the Company's officers and directors to return to Funko all salaries, bonuses, severance, and the value of any other remuneration, of whatever form paid to them by the Company, during the time they were in breach of the fiduciary duties owed to Funko.

d.   The Board should require the disgorgement of all profits realized as a result of the illicit insider sales described herein.

e.   The Board shall terminate, for cause, any Company employee responsible for the wrongdoing alleged herein and, to the extent an officer or director is found to have engaged in wrongdoing, such officer or director of the Company shall immediately be removed from his or her respective position at the Company and/or on the Board for cause.

f.   The Board should require that the Executives and Directors pay interest at the highest rate allowable by law on the amount of damages sustained by the Company as a result of their culpable conduct.

g.   The Board should adopt corporate governance reforms to ensure that the improper and illegal conduct complained of herein will not occur in the future, including, inter alia, reforms to the Company's internal controls and disclosure controls and procedures, conflicts of interest and corporate opportunity policies and procedures, insider selling controls and procedures, and compliance with legal and regulatory requirements.

131. On November 13, 2020, Plaintiff's counsel received a letter from defendants' counsel informing them that the Board had received the Demand and was "evaluating your request and will respond in due course." (the "Response Letter"). The Response Letter also requested proof of Plaintiff's stock ownership in the company. A true and correct copy of the Response Letter is attached hereto at **Exhibit B**.

132. Plaintiff sent a follow-up letter (the "Follow-Up Letter") to defense counsel on November 17, 2020, requesting information regarding the actions the Board had taken to address Plaintiff's concerns stated in the Demand and also providing proof

1   of Plaintiff's stock ownership in the Company.  A true and correct copy of the Follow-
2   Up Letter is attached hereto at **Exhibit C**.

3       133.   On November 23, 2020, Funko's counsel sent a letter to Plaintiff's
4   counsel, which acknowledged receipt of the Follow-Up Letter and stated, "We
5   anticipate that the demand will be discussed by the Board at its scheduled meeting in
6   February, and we will update you promptly following that meeting."  A true and correct
7   copy of this letter is attached hereto at **Exhibit D**.

8       134.   After receiving no further response, Plaintiff sent a follow-up letter to
9   defense counsel on January 14, 2021, requesting information regarding "what extent
10  any substantive plan has been initiated or considered to date" regarding Plaintiff's
11  concerns stated in the Demand.  A true and correct copy of the letter is attached hereto
12  at **Exhibit E**.

13      135.   Again, after receiving no further response, Plaintiff sent another follow-
14  up letter to defense counsel on February 26, 2021, requesting the same information in
15  the previous letter sent on January 14, 2021.  A true and correct copy of the letter is
16  attached hereto at **Exhibit F**.

17      136.   Finally, on March 15, 2021, Funko's counsel sent a letter to Plaintiff's
18  counsel, which stated, "the Board resolved that it is in the best interest of Funko and
19  its stockholders ***to defer taking action in response to your letter at this time***."  The
20  letter also stated that "the Board resolved to form a Special Litigation Committee
21  comprised of three independent Directors to monitor developments in the
22  aforementioned pending lawsuits."  A true and correct copy of the letter is attached
23  hereto at **Exhibit G**.

24      137.   Plaintiff responded to defense counsel on April 19, 2021, requesting that
25  the Company enter a tolling agreement, allow Plaintiff to participate in any mediation
26  in the Securities Class Action, and provide Plaintiff with documents in connection with
27  any §220 demands.  A true and correct copy of the letter is attached hereto at **Exhibit
28  H**.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

138.   After receiving no further response, Plaintiff sent another letter to defense counsel on June 11, 2021, proposing the same terms as in the previous letter sent on April 19, 2021.  A true and correct copy of the letter is attached hereto at **Exhibit I**.

139.   On July 19, 2021, Funko's counsel sent a letter to Plaintiff's counsel, ***again deferring to provide a substantive response***.  The letter stated, "the Board views the requests contained in your April 19, 2021 letter as ***premature and unwarranted***." A true and correct copy of the letter is attached hereto at **Exhibit J.**

140.   On September 8, 2021, Plaintiff's counsel sent a letter to Funko's counsel again proposing "the Board's indefinite deferral of the Demand in exchange for the terms outlined in our April 19, 2021, letter."  A true and correct copy of the letter is attached hereto at **Exhibit K.**

141.   On September 29, 2021, Funko's counsel sent a letter to Plaintiff's counsel, which stated, "the Special Litigation Committee has determined that, at the present time, the best interests of the corporation and its stockholders are served by monitoring developments in those actions and continuing to evaluate your client's Demand based on those developments." A true and correct copy of the letter is attached hereto at **Exhibit L.**

142.   After reviewing the Order in the Securities Class Action denying Funko's motion to dismiss in part, on December 3, 2021, Plaintiff's counsel sent a letter to Funko's counsel again requesting information as to the Special Litigation Committee's investigation.  A true and correct copy of the letter is attached hereto at **Exhibit M.**

143.   Finally, on December 10, 2021, Funko's counsel sent a letter to Plaintiff's counsel, which stated, "the Committee determined in an exercise of its business judgment that, at the present time, the best interests of the corporation and its stockholders continue to be served ***by deferring action on your client's demand***." A true and correct copy of the letter is attached hereto at **Exhibit N.**

144.   On May 3, 2022, upon becoming aware that the parties in the Securities Class Action have reached a settlement, Plaintiff's counsel sent a letter to Funko's

counsel requesting written confirmation that:  (i) the Company will not fund any portion of any Securities Class Action settlement, or any other pending or threatened litigation arising out of the same facts and circumstances described in the Litigation Demand; and (ii) the Company will not release any of the potential claims it has against any of the defendants named in the Litigation Demand,  or any other persons or entities who are alleged to have caused harm to the Company in connection with any such settlements.  A true and correct copy of the letter is attached hereto as **Exhibit O.**

145.  On May 6, 2022, counsel for Funko and its board of directors sent Plaintiff's counsel a letter stating that with respect to any potential settlement of the Securities Class Action, they expect that the entirety of the settlement amount will be paid by insurance carriers pursuant to Funko's liability insurance policies and that the Company does not intend at present to release any claims it may hold against any of the other named defendants in that action.  A true and correct copy of the letter is attached hereto as **Exhibit P.**

**B. The Board's Investigation Was Unreasonable Under Delaware Law And Its Refusal Of The Demand Was Not A Valid Exercise Of Business Judgment**

146.  As of the date of filing this complaint, Plaintiff's counsel has not received a response addressing the concerns detailed in the Demand and in the subsequent letters.  The Board failed to act independently, in good faith, and within the realm of sound business judgment when it failed to respond to the Demand, thereby effectively refusing it.

147.  The harms complained of in the Demand are actively ongoing and remain unremedied by the Board, causing further damage to the Company with each passing day.  In addition, while the Board is refusing to consider the allegations in the Demand, it is also actively forcing the Company to expend vast sums of money in defense of the very wrongdoers responsible for causing harm to the Company in the Securities Class Action, thereby further damaging the Company.

148.  Moreover, the Board's deferral will subject the Company's claims to the

43

applicable statute of limitations period.  These actions by the Board cannot be reasonably interpreted to be in the best interests of the Company or in good faith.

149.   Thus, the Board's unwarranted and egregious deferral of its consideration of the Demand will unduly prejudice Plaintiffs and the Company and is therefore a violation of Delaware law.  The Board's actions thus constitute a wrongful refusal of the Demand.  Accordingly, Plaintiff has satisfied any demand requirement and may pursue this action on behalf of the Company.

150.   Making matters worse, a Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws was filed in the Securities Class Action that brought forth allegations from numerous confidential witnesses formerly employed by the Company.  *See* Securities Class Action, ECF No. 142 (the "SAC").  For example, the SAC includes numerous witness statements regarding Fuko's obsolete inventory problem and sales shortfalls.  These statements should have been at least investigated by the Board.

151.   The Board's unwarranted and egregious deferral of its consideration of the Demand will unduly prejudice Plaintiff and the Company and is therefore a violation of Delaware law.  The Board's actions thus constitute a wrongful refusal of the Demand.  Accordingly, Plaintiff has satisfied any demand requirement and may pursue this action on behalf of the Company.

152.   Funko has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing.  Yet, the Wrongful Refusal Defendants have not filed any lawsuits against any persons who were responsible for the wrongful conduct.  Thus, the Wrongful Refusal Defendants continue to breach their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches.

153.   If Funko's current officers and directors are protected against personal liability for their breaches of fiduciary duties alleged in this complaint by Directors & Officers Liability Insurance ("D&O Insurance"), they caused the Company to purchase

that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders.   However, Plaintiff is informed and believes that the D&O Insurance policies covering the Individual Defendants in this case may contain provisions that eliminate coverage for any action brought directly by Funko against the Individual Defendants, known as the "insured versus insured exclusion."

154.   As a result, if the Wrongful Refusal Defendants were to sue any of themselves or certain of the officers of Funko, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. Therefore, the Wrongful Refusal Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

155.   Plaintiff has not made any demand on shareholders of Funko to institute this action since such demand would be a futile and useless act for the following reasons:

a. Funko is a publicly traded company with thousands of shareholders of record and at least hundreds of thousands of beneficial owners;

b. Making demand on such a number of shareholders would be impossible for Plaintiff, who has no means of collecting the names, addresses, or phone numbers of Funko's shareholders; and

c. Making demand on all shareholders would force Plaintiff to incur excessive expenses and obstacles, assuming all shareholders could even be individually identified with any degree of certainty.

# XIII.  CLAIMS FOR RELIEF

## COUNT I

### Breach of Fiduciary Duty
### (Against the Officer Defendants)

156.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

157.   The Officer Defendants owed fiduciary duties to Funko and its shareholders.  By reason of their positions as fiduciaries to the Company, the Officer Defendants owed duties of good faith, loyalty, candor, and truthful disclosure.  The Officer Defendants also owed Funko fiduciary duties imposed and defined by the federal securities laws, rules, regulations, and federal substantive corporate law, which impose broad obligations on Defendants vis-a-vis the corporation and its individual shareholders.  In addition, the Officer Defendants have specific fiduciary duties as defined by the Company's corporate governance documents, including its Code of Ethics, and principles that, had they been discharged in accordance with the Officer Defendants' obligations, would have prevented the misconduct and the consequent harm to the Company.

158.   The Officer Defendants violated these fiduciary duties by issuing, causing to be issued, or otherwise allowing the material omissions and misrepresentations described herein.  The Officer Defendants were well aware of the relevant disclosure laws, rules, and regulations.

159.   The Officer Defendants consciously breached their fiduciary duties and violated their corporate responsibilities in at least the following ways: affirmatively and repeatedly making and/or failing to correct improper statements in press releases, SEC filings, conference calls, and other public statements, relating to, among other things, Funko's business, operations, and growth prospects; failing to ensure the Company's compliance with relevant legal and regulatory requirements, including but not limited to requirements imposed under state and federal securities laws; and/or

1  failing to implement and maintain adequate internal controls.

2      160.   As a direct and proximate result of the Officer Defendants' breaches of

3  their fiduciary obligations, Funko has sustained significant damages.  Accordingly, the

4  Officer Defendants are liable to the Company.

5      161.   Plaintiff, on behalf of Funko, has no adequate remedy at law.

6  **COUNT II**

7  **Breach of Fiduciary Duty**

8  **(Against the Individual Defendants)**

9      162.   Plaintiff incorporates by reference and realleges each and every allegation

10  contained above, as though fully set forth herein.

11      163.   The Individual Defendants owed and owe Funko fiduciary obligations.

12  By reason of their fiduciary relationships, the Individual Defendants specifically owed

13  and owe Funko the highest obligation of loyalty, due care, good faith, fair dealing, and

14  candor in the administration of the affairs of the Company, including, without

15  limitation, the oversight of the Company's compliance with state and federal securities

16  laws, rules, and regulations, as well as the duty of candor and truthful disclosure with

17  respect to their public statements.

18      164.   The Individual Defendants also owed and owe Funko fiduciary duties

19  imposed and defined by the federal securities laws, rules, regulations, and federal

20  substantive corporate law, which impose broad obligations on Defendants vis-a-vis the

21  corporation and its individual shareholders.  The Individual Defendants violated these

22  fiduciary duties by issuing, causing to be issued, or otherwise allowing the material

23  omissions and misrepresentations described herein.

24      165.   In addition, the Individual Defendants have specific fiduciary duties as

25  defined by the Company's corporate governance documents, including its Code of

26  Ethics and the charters of various Board committees, and principles that, had they been

27  discharged in accordance with the Individual Defendants' obligations, would have

28  prevented the misconduct and the consequent harm to the Company.

166.   Each Individual Defendant violated his or her fiduciary duties by consciously causing, or consciously failing to prevent the Company from engaging in, the improper acts complained of herein.

167.   The Individual Defendants consciously breached their fiduciary duties and violated their corporate responsibilities in at least the following ways:

(i)   Failing to maintain an adequate system of oversight, accounting controls and procedures, disclosure controls, and other internal controls, which were necessary to prevent or promptly correct the improper statements made on the Company's behalf;

(ii)   Affirmatively and repeatedly making or allowing to be made, and/or failing to correct, improper statements in Company press releases, SEC filings, and other public statements relating to, among other things, Funko' business, operations, and prospects;

(iii)   Failing to ensure the Company's compliance with relevant legal and regulatory requirements, including but not limited to requirements imposed under state and federal securities laws;

(iv)   Awarding Funko' senior executives lavish compensation packages despite their responsibility for the Company's willful misconduct; and

(v)   Reappointing certain directors who had failed in their duties to the Audit Committee.

168.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Funko has sustained significant damages.  Accordingly, the Individual Defendants are liable to the Company.

169.   Plaintiff, on behalf of Funko, has no adequate remedy at law.

1

2

3

**COUNT III**

**Breach of Fiduciary Duty**
**(Against the Wrongful Refusal Defendants)**

4    170.   Plaintiff incorporates by reference and realleges each and every allegation

5 contained above, as though fully set forth herein.

6    171.   The Wrongful Refusal Defendants owed and owe Funko fiduciary

7 obligations.    By reason of their fiduciary relationships, the Wrongful Refusal

8 Defendants specifically owed and owe Funko the highest obligation of good faith, fair

9 dealing, loyalty, and due care in the administration of the affairs of the Company.

10    172.   The Wrongful Refusal Defendants violated these fiduciary duties by

11 failing to act independently, in good faith, and within the realm of sound business

12 judgment in considering and responding to the Demand.

13    173.   As a direct and proximate result of the Wrongful Refusal Defendants'

14 breaches of their fiduciary obligations, Funko has sustained significant damages.

15 Accordingly, the Wrongful Refusal Defendants are liable to the Company.

16    174.   Plaintiff, on behalf of Funko, has no adequate remedy at law.

17

**COUNT IV**

18

19

**Waste of Corporate Assets**
**(Against All Defendants)**

20    175.   Plaintiff incorporates by reference and realleges each and every allegation

21 contained above, as though fully set forth herein.

22    176.   As a result of Defendants' misstatements and failure to implement

23 adequate internal controls to ensure that the Company's SEC filings and other public

24 statements were not misleading, Funko is subject to the Securities Class Action.

25 Defendants have caused Funko to waste its corporate assets by forcing the Company

26 to expend valuable resources in defending itself in the ongoing litigation, in addition

27 to any ensuing costs from a potential settlement or adverse judgment.

28    177.   As a result of their waste of corporate assets, Defendants are liable to the

49

Company.

178.   Plaintiff, on behalf of Funko, has no adequate remedy at law.

## COUNT V

### Unjust Enrichment
### (Against All Defendants)

179.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

180.   By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Funko.  Defendants were unjustly enriched as a result of the compensation and remuneration they received while breaching fiduciary duties owed to the Company.

181.   Plaintiff, as a shareholder and representative of Funko, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

182.   Plaintiff, on behalf of Funko, has no adequate remedy at law.

## COUNT VI

### Breach of Fiduciary Duty Through the Misappropriation of Material, Non-Public Information
### (Against the Insider Selling Defendants)

183.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

184.   At the time the Insider Selling Defendants sold their Funko stock, they knew the information described above and sold Funko stock on the basis of such information.

185.   The information described above was proprietary, non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants

misappropriated to their own benefit when they sold Funko stock.

186.   The Insider Selling Defendants' sales of stock while in possession and control of this material, adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

187.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

188.   Plaintiff, on behalf of Funko, has no adequate remedy at law.

## COUNT VII

### Derivatively for Contribution Under Sections 10(B) and 21D of the Exchange Act
### (Against the Securities Class Action Defendants)

189.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

190.   During the Relevant Period, Funko and the Securities Class Action Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Relevant Period, did: (i) deceive the investing public, including Plaintiff and other shareholders, as alleged herein; and (ii) caused Plaintiff and other shareholders to purchase Funko common stock at artificially inflated prices.

191.   The Securities Class Action Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Funko common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

192.   Funko and the Securities Class Action Defendants, individually and in

concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

193. During the Relevant Period, the Securities Class Action Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

194. Funko and the Securities Class Action Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Funko and the Securities Class Action Defendants engaged in this misconduct to conceal Funko's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

195. Plaintiff and the shareholders have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Funko's common stock. Plaintiff and other shareholders would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Funko's common stock had been artificially inflated by Defendants' fraudulent course of conduct.

196. As a direct and proximate result of Funko's and the Securities Class Action Defendants' wrongful conduct, Plaintiff and the other shareholders suffered damages in connection with their respective purchases of the Company's common stock during the Relevant Period.

197. By virtue of the foregoing, Funko and the Securities Class Action Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## XIV. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment as follows:

A.     Finding that all of the Defendants have breached their fiduciary duties to the Company, wasted corporate assets, were unjustly enriched, and violated the federal securities laws;

B.     Directing Funko to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's Bylaws or Articles of Incorporation, and taking such other action as may be necessary to place before shareholders for a vote on the following corporate governance proposals, actions, or policies:

(i)     a proposal to strengthen the Company's accounting and disclosure controls to ensure that all material information is adequately and timely disclosed to the SEC and the public;

(ii)    a proposal to develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(iii)   a provision to permit the shareholders of Funko to nominate three candidates for election to the Board;

(iv)    an accounting by the Funko officers to the Company for all damages sustained, or to be sustained, by the Company by reason of the wrongs and misconduct complained of herein, and should make certain that no Company funds are used towards any settlement or resolution of the Securities Class Action, or any related or similar litigation;

(v)    the termination, for cause, any Company employee responsible for the wrongdoing alleged herein, including Andrew Perlmutter, Brian Mariotti, and Jennifer Fall Jung;

(vi)   the return to the Company all salaries, bonuses, and the value of other remuneration of whatever kind paid to them during the time they were in breach of their fiduciary duties; and

(vii)  the payment of interest by Funko officers, at the highest rate allowable by law, on the amount of damages sustained by the Company as a result of their culpable conduct.

C.    Against each Defendant in favor of Funko for the amount of damages sustained by Funko, jointly and severally, in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum legal rate allowable by law;

D.    Requiring Defendants to return to Funko all compensation and remuneration of whatever kind paid to them by the Company during the time that they were in breach of their fiduciary duties;

E.    Directing Defendants to establish, maintain, and fully fund effective corporate governance and compliance programs to ensure that Funko's directors, officers, and employees do not engage in wrongful or illegal practices;

F.    Granting additional appropriate equitable and/or injunctive relief to remedy Defendants' misconduct, as permitted by law;

G.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

H.    Granting such other and further relief as this Court deems just and equitable.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

## XV.  DEMAND FOR JURY TRIAL

2

Plaintiff demands a trial by jury as to issues so triable.

3

Dated:  May 9, 2022                    **JOHNSON FISTEL, LLP**

4

By:  */s/ Brett M. Middleton*

5

BRETT M. MIDDLETON

6

FRANK J. JOHNSON

JONATHAN M. SCOTT

7

501 West Broadway, Suite 800

8

San Diego, CA 92101

Telephone: (619) 230-0063

9

Facsimile: (619) 255-1856

10

BrettM@johnsonfistel.com

FrankJ@johnsonfistel.com

11

JonathanS@johnsonfistel.com

12

*Attorneys for Plaintiff Grant Smith*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

DocuSign Envelope ID: CCAA6D25-0661-4B3C-8FD6-31F8151E49DA

## <u>VERIFICATION</u>

I, Grant Smith, am a plaintiff in this derivative action.  I have reviewed the allegations made in the foregoing verified shareholder derivative complaint, know the contents thereof, and authorize its filing.  To those allegations of which I have personal knowledge, I believe those allegations to be true.  As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 5/7/2022

DocuSigned by:

71B47A5PEA944FA...

GRANT SMITH