**JOHNSON FISTEL, LLP**
Frank J. Johnson (SBN 174882)
FrankJ@johnsonfistel.com
Brett M. Middleton (SBN 199427)
BrettM@johnsonfistel.com
Jonathan M. Scott (SBN 323322)
JonathanS@johnsonfistel.com
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT SMITH, derivatively on behalf of FUNKO INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN MARIOTTI, RUSSELL NICKEL, ANDREW PERLMUTTER, JENNIFER FALL JUNG, GINO DELLOMO, MICHAEL LUNSFORD, CHARLES DENSON, ADAM KRIGER, KEN BROTMAN, DIANE IRVINE, AND SARAH KIRSHBAUM LEVY, <br><br> Defendants, <br><br> -and- <br><br> FUNKO INC., a Delaware corporation, <br><br> Nominal Defendant | Case No. 2:22-cv-03155-WLH-MAA <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date: November 15, 2024 <br> Hearing Time: 1:30 p.m. <br> Courtroom: 9B, 9th Floor <br> Judge: Hon. Wesley L. Hsu |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................ 2

II.    THE LITIGATION ............................................................. 4

    A.    Overview Of The Litigation ...................................... 4

    B.    Procedural History ................................................... 6

        1.    The Demand Made Action ............................. 6

        2.    The Delaware Demand Made Action ................... 6

        3.    The Demand Futility Action ......................... 7

    C.    Settlement Negotiations And Acceptance Of The Mediator's Recommendation ............................ 8

    D.    Exercising Its Business Judgment, The Funko Board Approved The Settlement ................................ 9

    E.    Preliminary Approval And Notice To Shareholders ......................... 9

III.    THE SETTLEMENT IS AN OUTSTANDING RESULT FOR FUNKO AND SHOULD BE APPROVED ................... 10

    A.    Legal Standards For Final Approval ............................... 10

    B.    The Settlement Confers Substantial Benefits To Funko ......................... 11

    C.    The Risks, Costs, Complexity, And Delays Of Continued Litigation ............................... 15

    D.    The Stage Of The Proceedings ......................... 17

    E.    The Experience And Views Of Counsel Favor Approval ......................... 18

    F.    Reaction Of Class Members To The Proposed Settlement ......................... 19

IV.    THE SEPARATELY NEGOTIATED ATTORNEYS' FEES ARE FAVORED AND SHOULD BE APPROVED ................... 20

V.    THE SERVICE AWARDS SHOULD BE APPROVED ................... 23

VI.    CONCLUSION ................................................................ 24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Chrysler Corp. v. Dann*,
  223 A.2d 384 (1966) ...................................................................................22

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005)...........................................................15

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)............................................................................19

*Feuer v. Thompson*,
  2013 WL 2950667 (N.D. Cal. 2013) .............................................................21

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ......................................................................................20

*In re Apple Computer Inc., Deriv. Litig.*,
  2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ...............................................17

*In re Atmel Corp. Deriv. Litig.*,
  2010 WL 9525643 (N.D. Cal. Mar. 31, 2010)..............................................11

*In re Caremark Int'l Inc. Deriv. Litig.*,
  698 A.2d 959 (Del. Ch. 1996).......................................................................16

*In re Hewlett-Packard Co. S'holder Deriv. Litig.*,
  716 F. App'x 603 (9th Cir. 2017) .................................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).................................................................17, 23

*In re NVIDIA Corp. Deriv. Litig.*,
  2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ..............................................10

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................20

*In re OSI Sys., Inc. Deriv. Litig.*,
  2017 WL 5642304 (C.D. Cal. May 2, 2017) .................................................11

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)...........................................................................15

*In re Plains Res., Inc.*,
  2005 WL 332811 (Del. Ch. Feb. 4, 2005) ....................................................22

*In re Rambus Inc. Deriv. Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................................................19

ii

*Kamen v. Kemper Fin. Servs. Inc.*,
  500 U.S. 90 (1991) ................................................................................ 16

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ......................................................................... 11, 20

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 19

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ..................................................... 10, 17, 19

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ....................................... 16

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................... 14

*Sauby v. City of Fargo*,
  2009 WL 2168942 (D.N.D. July 16, 2009) ......................................... 23

*Shlensky v. Dorsey*,
  574 F.2d 131 (3d Cir. 1978) ................................................................ 11

*Spiegel v. Buntrock*,
  571 A.2d 767 (Del. 1990) ................................................................... 16

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ............................................................ 22


**Rules**

Fed. R. Civ. Proc. 23.1 ................................................................... 1, 10

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure and the Court's previously issued Preliminary Approval Order (ECF No. 56), Plaintiff Grant Smith ("Plaintiff") herby moves this Court, before the Honorable Wesley L. Hsu, on November 15, 2024, at 1:30 p.m., at the United States District Court, Central District of California, First Street Courthouse, Courtroom 9B, 9th Floor, Los Angeles, California 90012, for entry of an Order: (i) approving the Settlement as fair, reasonable, and adequate; (ii) approving the separately negotiated and agreed to Fee and Expense Amount; and (iii) approving the requested Service Awards.  This motion is based on: (1) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Settlement; (2) the Declaration of Brett M. Middleton in Support of Plaintiff's Motion for Final Approval of Settlement; and (3) all other papers and proceedings in the Litigation.[1]

A proposed Order and Final Judgment granting the requested relief will be submitted with Plaintiff's reply papers after the October 17, 2024, deadline for objecting to the Settlement has passed.

## STATEMENT OF ISSUES TO BE DECIDED AND RELIEF SOUGHT

Whether the proposed settlement as set forth in the Stipulation and Agreement of Settlement ("Settlement") (ECF No. 51-2) is fair, reasonable, and adequate as to each of the Settling Parties, and whether the agreed Fee and Expense Amount and Service Awards are fair and reasonable, such that final approval

---

[1] All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated March 4, 2024 (the "Settlement Agreement," "Stipulation," or "Stip.") (ECF No. 51-2) or in the accompanying Declaration of Brett M. Middleton in Support of Plaintiff's Motion for Final Approval of Settlement ("Middleton Decl.").  Unless otherwise noted, all citations to "¶" or "Ex." refer to paragraphs or exhibits to the Middleton Declaration; all emphasis in this memorandum has been added; and all internal citations and quotation marks have been omitted.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

should be granted.

Plaintiff respectfully requests the Court to enter an order finally approving the Settlement, Fee and Expense Amount, and Service Awards, along with the entry of a Final Order and Judgment.

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Grant Smith ("Plaintiff"), through Plaintiff's Counsel,[2] respectfully submits this memorandum in support of his Motion for Final Approval of Settlement ("Motion") in connection with the above-captioned stockholder derivative action, brought on behalf of nominal defendant Funko, Inc. ("Funko" or the "Company").

## I.    INTRODUCTION

Approval of the proposed Settlement will bring an end to pending derivative actions instituted to remedy alleged breaches of fiduciary duty and violations of the federal securities laws by certain directors and officers of Funko.   The Settlement is the culmination of hard fought, arm's-length negotiations by experienced and well-informed counsel, with the assistance of Michelle Yoshida, Esq. of Phillips ADR Enterprises ("Mediator"), a nationally recognized mediator with extensive experience mediating stockholder derivative actions.

The Settlement confers substantial benefits on Funko by strengthening internal control functions, Board competence, oversight, and transparency, building in multiple levels of checks to forestall and prevent the very wrongdoing alleged by Plaintiffs from occurring in the future.   More specifically, as a result of Plaintiffs' Counsel's efforts, Funko has or shall: (1) appoint and additional independent director to the Board; (2) enhance Funko's Audit Committee

---

[2] As discussed herein, "Plaintiff's Counsel" refers to Johnson Fistel LLP and "Plaintiffs' Counsel" refers to the law firms of Johson Fistel, LLP, Robbins LLP, Bragar Eagel & Squire, P.C., Gainey McKenna & Egleston, The Brown Law Firm, P.C., and The Rosen Law Firm, P.A.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

governance to impose independence requirements on the Company's independent auditors and CFO; (3) enhance Funko's management-level Disclosure Committee to support the Audit Committee in the discharge of its obligations in connection with certification of its quarterly and annual filings with the Securities and Exchange Commission ("SEC"); (4) enhance the duties of the Controller to provide for additional coordination between the Audit Committee and the Disclosure Committee; (5) enhance the duties of the Company's Chief Legal Officer/Deputy General Counsel pertaining to ethics and compliance issues; (6) create the position of a Senior Director of Environmental, Social, and Governance ("ESG Director"); (7) enhance the Nominating and Corporate Governance Committee Charter to require that it include at least one woman and/or underrepresented minority member in the pool of candidates for Board vacancies; (8) enhance the Compensation Committee Charter to require an annual review of non-employee director compensation; (9) enhance director training pertaining to Funko's corporate governance policies and the best practices for public disclosures; (10) provided for increased stockholder transparency and access in connection with annual stockholder meetings and stockholder proposals; (11) enhance Funko's insider trading policy to require the Company's Chief Legal Officer or equivalent to pre-approve the implementation and amendment of all 10b5-1 Trading Plans; and (12) require training for certain employees concerning the Company's Code of Business Conduct and Ethics, and compliance and ethics generally. Middleton Decl., § VI; Stip., Ex. A.

As this Court noted when granting preliminary approval of the Settlement,[3] "the proposed Settlement falls within the range of possible approval criteria, as it

---

[3] As noted in the Stipulation, the Settlement will also resolve related derivative actions brought by the following plaintiffs: (i) Franco Cassella ("Cassella"), Dean Marconi ("Marconi"), Jacoby Plummer ("Plummer"), Amber Evans ("Evans"), and Michael Igelido ("Igelido"), plaintiffs in the stockholder derivative action

provides a beneficial result for Funko and appears to be the product of serious, informed, non-collusive negotiations overseen by an experienced mediator." Preliminary Approval Order, ECF No. 56, p. 2. Moreover, the independent non-defendant members of Funko's Board have determined that "the Settlement and each of its terms are fair, reasonable, and in the best interests of Funko and its stockholders." Stip., § IV.

Other benefits to the Company include finality, certainty, and eliminating the inherent risks of continued litigation. The assurance of the Settlement's substantial benefits, when weighed against the uncertainties and challenges of continued prosecution of the Litigation, fully justify this Court granting final approval of the Settlement. The results also support approval of the separately negotiated Fee and Expense Amount (which was overseen and assisted by Ms. Yoshida), and the modest Service Awards for each of the derivative plaintiffs.

In light of the substantial benefits achieved on behalf of Funko, Plaintiff respectfully submits that the Settlement constitutes an outstanding compromise of complex claims and merits final approval in all respects by the Court.

## II. THE LITIGATION

### A. Overview Of The Litigation

Funko, a Delaware corporation, is a leading pop culture lifestyle company that creates whimsical, fun, and unique products that enable fans of TV shows,

---

captioned *In re Funko, Inc. Deriv. Litig.*, No. 2:20-cv-03740-WLH-PJW (C.D. Cal.) (the "Demand Futility Action"); (ii) Richard Fletcher ("Fletcher") and Nathan Rubin ("Rubin"), plaintiffs in the stockholder derivative action captioned *Fletcher v. Mariotti*, No. 2022-0591 (Del. Ch.) (the "Delaware Demand Made Action", and together with this Demand Made Action and the Demand Futility Action, the "Litigation" or "Derivative Matters"). As set forth in the Stipulation of Settlement, the release provided for in the Settlement will also release overlapping derivative claims in another related stockholder derivative action pending in the Delaware Court of Chancery, captioned *Silverberg ex rel. Funko, Inc. v. Mariotti*, No. 2021-0517 (Del. Ch.) (the "*Silverberg* Action"). Stip., §V.4.

---

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

movies, video games, sports teams, and music to express their affinity for pop culture properties and trends.  As alleged in the Litigation, the Company's sales were directly tied to the commercial success of its new releases, with 90% of its sales coming within the first three to four months after release.

In the Litigation, Plaintiffs allege that the Individual Defendants breached their fiduciary duties by making or causing Funko to make public statements and omissions that failed to disclose important adverse facts about Funko's operations and financial forecast (*e.g.,* concealing the Company's lower-than-expected sales and likely need to "write-down" slower moving inventory).  Plaintiffs further allege that Defendants described that the accumulation of excess inventory was only a possible, future risk to its business, when in fact, the risk that the Company might accumulate excess or obsolete inventory had already materialized.  The Litigation further alleges that the Individual Defendants were unjustly enriched, and that certain of the Individual Defendants sold Funko stock at artificially inflated prices while in possession of material nonpublic information.

The truth was revealed to the public first on February 5, 2020, when Funko disclosed a significant decrease in fourth quarter net sales compared to the preceding year from $233 million in the fourth quarter of 2018 to $214 million in the fourth quarter of 2019.  Adding to this decline in sales, the Company disclosed a $16.8 million-dollar write-down to dispose of slower-moving inventory.  On March 5, 2020, Funko announced its fourth quarter and full year 2019 financial results.  Therein, the Company affirmed that net sales for the fourth quarter had decreased 4% year-over-year to $213.6 million.

Among other alleged damages to Funko, the Litigation alleges that the Individual Defendants' wrongdoing exposed Funko to liability in the securities class action pending in the Central District of California captioned *Ferreira v. Funko, Inc., et al*., No. 2:20-cv-02319 (C.D. Cal.) (the "Securities Class Action").

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

The Individual Defendants deny all allegations and contentions made by Plaintiffs, and each of them, in the Litigation.

### B.    Procedural History

#### 1.    The Demand Made Action

On October 21, 2020, Plaintiff Smith issued a formal litigation demand (the "*Smith* Litigation Demand") to Funko's Board of Directors (the "Board"), wherein he demanded that the Board commence a civil action against the Individual Defendants to recover for the benefit of the Company the amount of damages he asserted had been sustained by Funko as a result of their breaches of fiduciary duties alleged herein.  Stip., § I.B.2.  Over the next year and a half, the parties exchanged numerous letters addressing their positions concerning the *Smith* Litigation Demand, the Board's response, the formation of the Special Litigation Committee, tolling agreements, and the status of the related Securities Class Action.  *Id*.[4]

On May 9, 2022, Plaintiff Smith filed a complaint in this Court, alleging the Litigation Demand was wrongfully refused by the Individual Defendants and asserting claims on Funko's behalf against the Individual Defendants for violations of §10(b) of the Exchange Act, breach of fiduciary duties (the alleged wrongful refusal of the *Smith* Litigation Demand, disclosure, and oversight violations), unjust enrichment, waste of corporate assets, and insider selling (the previously defined "Demand Made Action").  *Id.*

#### 2.    The Delaware Demand Made Action

On June 25, 2021, Plaintiffs Fletcher and Rubin issued their litigation demand (the "*Fletcher Rubin* Litigation Demand") to the Board, alleging wrongdoing and demanding that the Board investigate and initiate litigation

---

[4] For a more detailed recitation of the Litigation's procedural history, Plaintiff Smith respectfully refers the Court to § I.B. of the Stipulation of Settlement.  *See* ECF No. 51-2.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

against the culpable fiduciaries.  Stip., § I.B.3.  Over the following two years, the parties exchanged numerous letters addressing their respective positions concerning (among other things) the *Fletcher Rubin* Litigation Demand, the Board's response, the formation of the Special Litigation Committee, tolling agreements, and the status of the related Securities Class Action.  *Id*.  On July 5, 2022, Plaintiffs Fletcher and Rubin filed a complaint in the Delaware Court of Chancery, alleging that their litigation demand was wrongfully refused and asserting claims on Funko's behalf against the Individual Defendants for breach of fiduciary duties and unjust enrichment (the previously defined "Delaware Demand Made Action").  *Id*.

### 3.      The Demand Futility Action

On April 23, 2020, Plaintiffs Cassella, Marconi, and Plummer filed a stockholder derivative action in this Court on behalf of Funko against certain of its officers and directors (the "*Cassella* Action").  On June 5, 2020, Plaintiff Evans filed a stockholder derivative action in this Court (the "*Evans* Action").  On June 16, 2020, Plaintiff Igelido filed a stockholder derivative action in this Court (the "*Igelido* Action").  Stip., § I.B.1.

On July 6, 2020, the Court entered an Order consolidating the Cassella, Evans, and Igelido Actions into a consolidated derivative action (the previously defined "Demand Futility Action") and appointed Gainey McKenna & Egleston and The Rosen Law Firm, P.A. as Co-Lead Counsel.  On August 13, 2020, the Court stayed the Demand Futility Action pending the resolution of the motion to dismiss in the Securities Class Action.  *Id*.

On March 20, 2023, the Court ordered the Demand Futility Action stayed pending the filing of a motion to approve the Settlement.  *Id*.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

### C.    Settlement Negotiations And Acceptance Of The Mediator's Recommendation

On December 21, 2021, counsel for the plaintiffs in the Demand Futility Action served the Individual Defendants with a settlement demand.  Stip., § I.C.  Then, on April 27, 2022, counsel for the parties in the Demand Futility Action attended a full-day mediation (the "Full-Day Mediation") organized and conducted by the Mediator.  Yoshida Decl., ¶8.  The Full-Day Mediation ended without a settlement.  Stip., § I.C.

On May 16, 2022, Plaintiff Smith served a detailed settlement demand on counsel for the Board.  Stip., § I.C.  Counsel for plaintiffs in the Demand Made Action and the Delaware Demand Made Action (collectively, the "Demand Made Actions") thereafter began coordinating efforts, and, on July 15, 2022, served the Individual Defendants with a joint settlement demand.  *Id.*

Between August 1, 2022, and December 8, 2022, the Settling Parties exchanged numerous detailed and extensive written proposals and counter-proposals and debated in numerous communications the terms of settlement, including extensive corporate governance reforms.  *Id.*  Then, on December 14, 2022, counsel for the plaintiffs in the Demand Made Actions, along with counsel for the Individual Defendants, participated in a half-day Zoom video conference mediation (the "Half-Day Mediation") organized and conducted by the Mediator.  Yoshida Decl., ¶9; Stip., § I.C.  While the Half-Day Mediation ended without a settlement, the Settling Parties nonetheless made meaningful progress and continued their settlement negotiations in the months following the Mediation, with the Mediator's assistance.  Additional detailed written proposals were exchanged and debated in numerous communications.  Stip., § I.C.; Yoshida Decl., ¶10.

On March 10, 2023, the Settling Parties reached an agreement in principle on the corporate governance measures for Funko to adopt as consideration for a

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

global resolution of the Litigation.  Stip., § I.C.; Yoshida Decl., ¶14.  Thereafter, the Settling Parties negotiated and finalized the formal operative terms of the Settlement.  *Id.*

After the Settling Parties reached an agreement in principle on the material substantive terms to resolve the Litigation, counsel commenced negotiations regarding an appropriate amount of attorneys' fees and expenses commensurate with the value of the Settlement benefits and the contributions of plaintiffs' Counsel to the Settlement.  Stip., § I.C.; Yoshida Decl., ¶15.  The fee negotiations were supervised by the Mediator, who was familiar with the complexity of the issues, risks, and challenges confronted by the plaintiffs, as well as plaintiffs' Counsel's efforts in securing the Settlement benefits.  Stip., § I.C.  Following a number of exchanges through the Mediator, on October 5, 2023, plaintiffs' Counsel and Defendants' Counsel accepted the Mediator's proposal, agreeing to the Fee and Expense Amount of $2,150,000, subject to Court approval.  *Id.*

**D.    Exercising Its Business Judgment, The Funko Board Approved The Settlement**

The Funko Board, in an exercise of its independent business judgment, unanimously approved the Settlement, and each of its terms, as fair, reasonable, and in the best interest of Funko and its stockholders.  Stip., § IV.  Funko's Board also acknowledged that the adoption, implementation, and maintenance of the corporate governance Measures "provide a significant and material benefit to Funko and its stockholders."  *Id.*

**E.    Preliminary Approval And Notice To Shareholders**

On July 26, 2024, after confirming that it had reviewed all the materials, this Court granted preliminary approval.  ECF No. 56.  This Court authorized Notice of Proposed Settlement to Funko shareholders, and set November 15, 2024, at 1:30 p.m. as the hearing date for final approval of the Settlement.  *Id.*  The Notice

1    was filed with the SEC via Form 8-K on August 2, 2024, and posted on the

2    Company's website along with the Stipulation.   The Summary Notice was

3    published in *Investor's Business Daily* online edition on August 5, 2024.

4    ECF No. 57; Middleton Decl., ¶50.

5    **III.    THE SETTLEMENT IS AN OUTSTANDING
       RESULT FOR FUNKO AND SHOULD BE APPROVED**

6

7           **A.    Legal Standards For Final Approval**

8           "There is a strong policy favoring compromises that resolve litigation, and

9    case law in the Ninth Circuit reflects that strong policy."  *In re NVIDIA Corp.*

10   *Deriv. Litig.*, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008).  This policy is

11   especially true in the context of shareholder derivative actions, which are

12   "notoriously difficult and unpredictable" and where "settlements are favored."  *Id.*

13   Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the

14   fairness of a settlement of a shareholder derivative action.  Under Rule 23.1, a

15   derivative action "may be settled, voluntarily dismissed, or compromised only

16   with the court's approval.  Notice of a proposed settlement, voluntary dismissal,

17   or compromise must be given to shareholders or members in the manner that the

18   court orders."  Fed. R. Civ. P. 23.1(c).

19          In determining whether to approve a settlement, "the court's intrusion upon

20   what is otherwise a private consensual agreement negotiated between the parties

21   to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

22   that the agreement is not the product of fraud or overreaching by, or collusion

23   between, the negotiating parties, and that the settlement, taken as a whole, is fair,

24   reasonable and adequate to all concerned."  *Officers for Just. v. Civ. Serv. Comm'n*

25   *of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

26          The Ninth Circuit has provided further guidance stating that district courts

27   may "consider a range of factors, including the strength of the plaintiffs' case, the

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

risk, expense, complexity, and likely duration of further litigation, the amount offered in settlement, the stage of the proceedings, the experience and views of counsel, and the reaction of class members to the proposed settlement." *In re Hewlett-Packard Co. S'holder Deriv. Litig.*, 716 F. App'x 603, 605 (9th Cir. 2017). Each of these factors favors final approval.

## B.    The Settlement Confers Substantial Benefits To Funko

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action ***is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest***." *In re OSI Sys., Inc. Deriv. Litig.*, 2017 WL 5642304, at *2 (C.D. Cal. May 2, 2017) (emphasis added); *In re Atmel Corp. Deriv. Litig.*, 2010 WL 9525643, at *12 (N.D. Cal. Mar. 31, 2010) (quoting *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978)). In analyzing whether a non-monetary benefit is "substantial" enough to support a settlement, the Court should consider whether the relief is "something more than technical in its consequence and . . . that [it] accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970).

Here, the Measures are tailored to directly address the wrongdoing allegations underlying the Litigation. *See* Yoshida Decl., ¶17; Middleton Decl., ¶77. Accordingly, they provide substantial benefits to Funko because they will reduce the potential future occurrence of the alleged corporate misconduct and governance gaps in the future and bolster investor confidence. This Litigation concerns alleged false and misleading public statements concerning the Company's ***sales and growth, inventory management, and financial forecasting***. *See* § II.A, *supra*. To address these alleged issues, the Settlement requires the

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

Audit Committee Charter to be amended to ensure adequate audit and finance function, and ***the Audit Committee will now receive quarterly inventory reports from management***, ensuring that the Audit Committee and the Board are aware of levels and changes in the Company's inventory levels and other relevant inventory-related topics and trends.  Middleton Decl., § VI.B.1; Stip., Ex. A, § III.B.

The Measures will help create a more independent, diverse, and better-functioning Board, including through the ***creation of the new position of ESG Director***, who will report to the Board.  Middleton Decl., § VI.D; Stip., Ex. A, § I. Significantly, the Measures also call for the addition of ***a new independent director*** along with enhanced processes that will ensure diversity in the pools of potential future director nominees and full Board approval for ultimate nomination to the Board.  Middleton Decl., §§ VI.A, VI.B.2; Stip., Ex. A, § II.  The Measures also provide for an ***enhanced director training program***.  Middleton Decl., § VI.C; Stip., Ex. A, § III.D.  Finally, the Charter of the Compensation Committee also will be amended to require an annual review of non-employee director compensation.  Middleton Decl., § VI.B.3; Stip., Ex. A, § III.C.

In addition to Board-level reforms, the Settlement also addresses the issues at the heart of the Litigation at the management level by ensuring that all relevant members of senior management serve on and in appropriate roles on the Disclosure Committee and requiring that the Disclosure Committee ***review and evaluate relevant inventory and sales data and other key operational metrics*** in connection with the preparation and approval of the Company's annual and quarterly SEC filings.  Middleton Decl., § VI.E; Stip., Ex. A, § V.  The Measures also provide that the Disclosure Committee ***shall report directly to the Audit Committee***. Moreover, the Settlement enhances the duties and responsibilities of Funko's Controller, who shall act as the liaison between management (*e.g.,* the Disclosure

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

Committee) and the Audit Committee, perform a ***pre-publication review*** of draft quarterly and annual reports and related materials to identify and disclose material legal and regulatory risks, and work with the Chief Legal Officer and Deputy General Counsel to ***evaluate the adequacy of Funko's internal controls*** and develop proposals for improvements.  Middleton Decl., § VI.F; Stip., Ex. A, § VIII.

The Litigation also alleges that certain defendants sold Funko stock while in possession of allegedly material non-public information.  Accordingly, the Settlement requires Funko's Insider Trading Policy to be amended to provide that the implementation and amendment of all 10b5-1 plans and all proposed transactions in Funko securities by Section 16 officers not executed pursuant to a Rule 10b5-1 plan ***must be pre-approved*** by the Chief Legal Officer (or equivalent), or, if the transaction is entered into by the Chief Legal Officer, pre-cleared by the CFO.  Middleton Decl., § VI.I; Stip., Ex. A, § VI.

The Settlement also provides for ***increased stockholder transparency*** and access in connection with annual stockholder meetings and stockholder proposals. Middleton Decl., § VI.H; Stip., Ex. A, § IV.

The Settlement also provides for ***additional training for employees*** involved in preparing the Company's financial statements, communications with the Company's independent auditor, and disseminating or producing the Company's public statements, which pertains to the Company's Code of Business Conduct and Ethics, and compliance and ethics generally.  Middleton Decl., § VI.J; Stip., Ex. A, § VII.

The foregoing Measures confer a substantial economic benefit on Funko and its stockholders because more rigorous, independent, and effective oversight will (i) improve corporate decision-making and execution of key corporate strategies; (ii) improve the Company's business prospects; (iii) ensure accurate

disclosures to investors and the public at large; and (iv) reduce the costs associated with failure to comply with disclosure and other legal or regulatory requirements. Numerous studies have confirmed that investors are willing to pay a premium for stock in well-governed corporations, thus driving substantial increases in long-term stockholder value.[5]

The Measures were negotiated with the assistance of a highly experienced Mediator, who believes the Measures "create a benefit for [Funko] by strengthening its corporate governance and presents a favorable result for Funko" considering uncertainties of litigation. Yoshida Decl., ¶17. Further, the "negotiations were extremely vigorous, completely at arm's length, and fully conducted in good faith." *Id.*, ¶16; *see Satchell v. Fed. Express Corp.*, 2007 WL 1114010 at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

After considering the terms of the Settlement and exercising its business judgment to approve it, Funko's Board acknowledged that the adoption, implementation, and maintenance of the corporate governance Measures "provide a significant and material benefit to Funko and its stockholders." Stip., § IV.

This Court reviewed the Measures in connection with its granting of the preliminary approval and concluded that "the proposed Settlement falls within the range of possible approval criteria, as it provides a beneficial result for Funko." ECF No. 56; Middleton Decl., ¶81.

---

[5] *See* ECF Nos. 51-3, 51-4, and 51-5; *id.*, Ex. 2 (P. Gompers, J. Ishii & A. Metrick, *Corporate Governance and Equity Prices,* Quarterly Journal of Economics, Vol. 118, No. 1, pp. 107–55, Feb. 2003); *id.,* Ex. 3 (Brown, L. D., Ph.D., & Caylor, M. L., *The Correlation between Corporate Governance and Company Performance*, Institutional Shareholder Services (2004)); *id.*, Ex. 4 (V. Cunant, M. Gina & M. Guadalupe, *The Vote Is Cast: The Effect of Corporate Governance on Shareholder Value*, Journal of Finance, American Finance Association, Vol. 67(5), pp. 1943–77 (Oct. 2012)).

1    *Finally*, Funko has agreed to maintain the Measures for a minimum of four

2    (4) years, which is a meaningful amount of time to ensure that the Measures

3    become embedded in the Company's policies, practices, and corporate culture,

4    thus protecting against discontinuation of these Measures following the four-year

5    period.  Middleton Decl., ¶80; Stip., § V, 2.1; *Cohn v. Nelson*, 375 F. Supp. 2d

6    844, 850 (E.D. Mo. 2005) (finding that corporate governance enhancements that

7    must be in place for no less than three years will "provide meaningful ways of

8    avoiding the problems [the company] experienced in the recent past").

9          **C.    The Risks, Costs, Complexity,**
             **And Delays Of Continued Litigation**
10

11         The Ninth Circuit observed in affirming the district court's approval of a

12   derivative settlement, "the odds of winning [a] derivative lawsuit [are] extremely

13   small" because "derivative lawsuits are rarely successful."  *In re Pac. Enterprises*

14   *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  The *Smith* Action as well as the other

15   Derivative Matters are no different.

16         Weighed against the substantial risk that continued litigation would yield no

17   benefit, the Settlement's guaranteed and immediate benefits are plainly fair,

18   reasonable, and adequate.  Specifically, while Plaintiff maintains that his claims

19   are meritorious, liability was by no means assured.  Even if Plaintiff were to

20   establish liability, the certainty of collecting damages or securing meaningful

21   corporate governance measures is far from certain.  The Settlement eliminates

22   these risks and guarantees that Funko and its stockholders will get the substantial

23   benefits afforded by the Settlement if approved.  Middleton Decl., ¶83.

24         First, the Derivative Matters would need to surpass the pleading stage,

25   which is no easy feat considering the challenges of establishing the demand

26   requirements under Delaware law.  *See* Delaware Chancery Court Rules,

27   Rule 23.1.  Plaintiffs that served litigation demands, like Plaintiff here, would

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

specifically need to establish that the Board wrongfully refused the respective demands, a decision generally protected under the business judgement rule. *Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990). For plaintiffs Cassella, Marconi, Plummer, Evans, and Igelido, pleading demand futility, too, presented its own challenges. *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991) (demand futility is satisfied only under "extraordinary conditions"). The Derivative Matters also allege violations of the federal securities laws and breaches of fiduciary duties, and certain claims rest on circumstantial evidence and alleged oversight failures, the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment. *See In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

Even if Plaintiffs' Counsel were successful in establishing liability, the issue of damages would have been disputed. *See, e.g., Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *5 (N.D. Cal. Feb. 15, 2011). Continued litigation would also likely warrant significant discovery spanning years of corporate events, disclosures, and operational decisions. Such discovery practice would be costly, expensive and time-consuming for the Settling Parties. Middleton Decl., ¶84. Expected motions for summary judgment would have to be briefed and argued, and trials could occupy counsel on all sides for weeks—putting aside potential conflicts and/or confusion that could arise from multi-jurisdiction litigation concerning overlapping facts and events. Moreover, any judgments favorable to Plaintiffs would likely be the subject of post-trial motions and appeals, potentially prolonging the cases for years with the ultimate outcome uncertain. Middleton Decl., ¶85.

Moreover, the related Securities Class Action settled for just $7 million, and that entire amount was paid using insurance money, meaning Funko did not pay out of its own pocket to resolve the Securities Class Action, limiting the potential

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

economic harm allegedly suffered by the Company that would be recoverable through prosecution of the Derivative Matters.

By contrast, the Settlement provides immediate and substantial benefits to Funko and its current stockholders and avoids years of delay, added expense, and uncertainty.  These considerations support the Settlement's approval.  *See In re Apple Computer Inc., Deriv. Litig.*, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) ("principal factor to consider . . . is the benefit to [the real party in interest] as compared to the risks posed by derivative litigation").

**D.    The Stage Of The Proceedings**

The stage of the proceedings and the amount of discovery completed is another factor the Court may consider in determining the fairness, reasonableness, and adequacy of a settlement.  *Officers for Just.*, 688 F.2d at 625.

Notwithstanding that more than three years have passed since the Litigation was commenced, the Settlement precedes formal discovery, motions for summary judgment, and other costly litigation activities, thereby avoiding the expense of protracted trial preparation and the cost of time and attention diverted from Funko's day-to-day business operations.  The Ninth Circuit has recognized, "formal discovery is not a necessary ticket to the bargaining table" where the parties have "sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations omitted).  Towards that end, the Settling Parties have reached a stage in the proceedings where an intelligent evaluation of the strengths and weaknesses of the Litigation, including the thoroughness and propriety of the Settlement, can be fairly made.  Middleton Decl., ¶87.

Prior to filing the Litigation and continuing thereafter, Plaintiffs' Counsel conducted an intensive investigation of the allegations.  This investigation included, *inter alia*: (i) analyzing Funko's public SEC filings, press releases,

announcements, transcripts of investor conference calls, and news articles; (ii) reviewing the publicly-available pleadings against Funko related to the allegations in the Litigation; (iii) analyzing the allegations contained in the related Securities Class Action; (iv) researching, drafting, and filing stockholder derivative complaints; (v) reviewing more than 1,200 pages of internal corporate books and records that were produced to Plaintiffs by Funko in connection with the Litigation; (vi) researching the applicable law with respect to the claims asserted (or which could be asserted) in the Litigation and the potential defenses thereto; (vii) researching corporate governance issues; (viii) preparing detailed litigation and settlement demands; (ix) participating in the Full-Day Mediation and Half-Day Mediation; (x) engaging in extensive pre- and post-mediation settlement discussions and exchanging extensive corporate governance reform proposals and counteroffers, with the Mediator and counsel for the Defendants; and (xi) negotiating and drafting the settlement documentation for presentment to the Court. Stip., § II.

Additionally, the Settling Parties' mediation and Settlement processes, which included broad analysis, negotiation and review of the Settling Parties' respective positions, and review of internal governance information such as the policies and committee charters of the Board, enabled Plaintiffs to have a clear picture of the strengths and weaknesses of the Litigation and make reasoned judgments in negotiating the Measures. Thus, the Settling Parties were able to effectively settle the Derivative Matters at a juncture when they had a firm understanding of the salient legal and factual issues—and the strengths and weaknesses of those issues—underlying the Litigation. Middleton Decl., ¶88.

**E.    The Experience And Views Of Counsel Favor Approval**

Significant credence and weight are afforded to the opinions and recommendations of experienced counsel who determine that settlement is in the

best interest of those affected by its terms. *See Officers for Just.*, 688 F.2d at 625. By negotiating and accepting the terms of the Settlement and the Mediator's Recommendation, the derivative plaintiffs and Funko, and counsel for each, have independently considered the Settlement and all agree that it is in the best interest of Funko and its stockholders. *See* Middleton Decl., ¶3; Stip., § II.

Here, Plaintiffs' Counsel has litigated and favorably resolved scores of shareholder class and derivative actions, including those arising out federal securities violations, misrepresentations relating to a public company's disclosure controls and procedures, revenue recognition, and internal controls over financial reporting, and has been approved and/or appointed as lead counsel by state and federal courts throughout the country in such matters. Middleton Decl., ¶89. As a product of Plaintiffs' Counsel's experience, they have a unique insight into the legal and factual issues presented and have leveraged that collective experience to effectively and efficiently prosecute the Litigation. *Id.* Defendants were also represented by Latham & Watkins LLP, a veteran securities litigation defense firm. *Id.* This further supports a presumption that the Settlement is fair and reasonable. *See, e.g., Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

The Settlement was also arrived at with the aid of a well-reputed, neutral mediator. *See* Yoshida Decl., ¶5; Stip., § I.C.; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure").

### F.   Reaction Of Class Members To The Proposed Settlement

"[T]he reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re Rambus Inc.*

*Deriv. Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009). Current Funko Stockholders have until October 17, 2024, to object to the Settlement, Fee and Expense Amount, and/or Service Awards. To date, Plaintiffs' Counsel has not received any objections. Middleton Decl., ¶90. The lack of objections weighs in favor of approval of the Settlement. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (three objections out of tens of thousands of shareholders "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"). Plaintiff will address objections, if any, in his reply papers, to be filed on November 1, 2024.

Thus, the Settlement should be finally approved.

## IV. THE SEPARATELY NEGOTIATED ATTORNEYS' FEES ARE FAVORED AND SHOULD BE APPROVED

The Supreme Court has made clear that an award of attorney's fees is justified where a corporation receives a "substantial benefit" from a derivative suit, regardless of whether the benefit is pecuniary in nature. *Mills*, 396 U.S. at 375; *see also In re Nvidia Corp. Deriv. Litig.*, No. 06-cv-06110-SBA (N.D. Cal. Mar. 18, 2009), ECF No. 185, p. 5 ("Under the 'substantial benefit' doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs.").

Here, in recognition of Plaintiffs' Counsel's efforts in achieving a Settlement that provides substantial benefits to Funko and its stockholders, Defendants agree Plaintiffs' Counsel should be paid $2,150,000 in attorneys' fees and expenses, subject to Court approval. Middleton Decl., ¶91; Stip., § V, 5.1. The Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues as the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a

second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").  Indeed, "a negotiated fee agreement . . . is not subjected to the same level of judicial scrutiny as a disputed fee request."  *Feuer v. Thompson*, 2013 WL 2950667, at *4 (N.D. Cal. 2013).[6]

All parties agree that the Measures provided for under the Settlement confer substantial benefits upon Funko and Current Funko Stockholders.  Thus, the Settling Parties agree "that the Fee and Expense Amount is fair and reasonable in light of the substantial benefits conferred upon Funko and Current Funko Stockholders by the Settlement."  Stip., § V, 5.1.

The process pursuant to which the amount of fees was agreed upon supports a finding by this Court that it is fair and reasonable.  It was only after the Settling Parties reached an agreement on the substantive terms of the Settlement that they began negotiating what they believed to be fair and reasonable compensation for Plaintiffs' Counsel.  Yoshida Decl., ¶15.  The Mediator's experience in mediating over 500 disputes, including her unique knowledge of reasonable attorneys' fee awards in dozens of securities class actions and shareholder derivative cases, proved to be invaluable in helping the parties break their impasse on what the amount should be.  After "a number of exchanges through [the Mediator], on October 5, 2023, Plaintiffs' Counsel and Defendants' Counsel reached an agreement on the Fee and Expense Amount of $2,150,000, subject to Court approval."  *Id*.

---

[6] Unlike class actions, where the court's review protects absent class members from potential conflicts of interest with counsel for the named plaintiffs and the attorneys' fees awarded usually reduce the payment to the class, in shareholder derivative actions, the Company and its insurers are actively involved in the negotiations and the fees do not affect class members.  This case was no different, as Funko and its insurers had every incentive to negotiate aggressively to limit fees.  Under these circumstances, the negotiated fee best represents the market outcome fee awards are intended to approximate and should not be disturbed.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

The contingent nature of Plaintiffs' Counsel's engagement in the Derivative Matters, which was complex and fraught with risks, should also be considered by the Court in reviewing the Fee and Expense Amount. When Plaintiffs' Counsel undertook the representation of the derivative plaintiffs in the Litigation, they were aware that they would have to devote many hours of hard work to the prosecution of a difficult derivative case without any assurance of receiving any fees or even reimbursement for out-of-pocket expenses. Middleton Decl., ¶94. Plaintiffs' Counsel's willingness to take on this risky and challenging Litigation justifies the award of the agreed-upon Fee and Expense Amount that was recommended by the Mediator. *See Chrysler Corp. v. Dann*, 223 A.2d 384, 389 (1966) (Chancellor exercised "sound business judgment" by taking "the contingent nature of the litigation" into consideration in fixing the amount of attorneys' fees); *In re Plains Res., Inc.*, 2005 WL 332811, at *6 (Del. Ch. Feb. 4, 2005) (noting public policy "to reward this risk-taking in the interests of shareholders").

A lodestar cross-check further confirms the reasonableness of the Fee and Expense Amount. Over the course of almost four years of litigation and negotiations, Plaintiffs' Counsel expended 2,509.65 hours prosecuting the derivative claims from inception to settlement. Middleton Decl., ¶95. In prosecuting Funko's claims to fruition, Plaintiffs' Counsel incurred time and expenses of 2,509.65 hours and $16,415.26, respectively, resulting in a slight multiplier of 1.04 (based on $2,150,000.00 attorneys' fee divided by $2,071,061.75 lodestar) which is fair and reasonable. *Id.*; *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–54 (9th Cir. 2002) (citing 23 shareholder settlements and multipliers for each, for which the average multiplier was 3.28). Counsel in the *Silverberg* Action also reports time and expenses of 731.25 hours and $11,477.48, respectively, resulting in a lodestar of $635,962.00. ECF No. 65 (Declaration of Jeffery S. Abraham). While Silverberg is not a party to the

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT, APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

1    Settlement Agreement, he supports approval of the Settlement.

2         Courts routinely approve agreed-to fees in derivative litigation involving

3    corporate governance enhancements like the Measures secured here, which further

4    evidences the reasonableness of the agreed-to fee.  *See, e.g., In re Apple Inc.*

5    *S'holder Deriv. Litig.*, No. 4:19-cv-05153-YGR (N.D. Cal. July 17, 2024)

6    (approving $6 million for corporate therapeutics) (Middleton Decl., Ex. 2); *In re*

7    *CoreCivic, Inc. S'holder Deriv. Litig.*, No. 3:16-cv-03040 (M.D. Tenn. Dec. 2,

8    2022) ($3.5 million fee for corporate therapeutics) (Middleton Decl., Ex. 3); *In re*

9    *MiMedx Group, Inc. S'holder Deriv. Litig.*, No. 1:18-cv-04486-WMR (N.D. Ga.

10   Dec. 21, 2020) ($3.5 million for governance reforms) (Middleton Decl., Ex. 4);

11   *Sun v. Garipalli*, No. 3:21-cv-00311 (M.D. Tenn. July 16, 2024) ($2.5 million fee

12   for corporate therapeutics) (Middleton Decl., Ex. 5); and *In re Zuora, Inc. Deriv.*

13   *Litig.*, No. 3:19-cv-05701-SI (N.D. Cal. Sept. 18, 2023) (approving $2.0 million

14   fee for corporate governance reforms) (Middleton Decl., Ex. 6).

15        Plaintiffs respectfully submit that their requested fee award is relatively

16   modest, and within the bounds of similar precedent actions.

17   **V.    THE SERVICE AWARDS SHOULD BE APPROVED**

18        The Stipulation further provides that Plaintiffs may apply for Service

19   Awards in the amount of $2,500, each, to be paid to the derivative plaintiffs

20   exclusively from the Fee and Expense Amount.  Stip., § V, 5.8.  Plaintiff submits

21   that the modest Service Awards should also be approved.  *See* Middleton Decl.,

22   ¶ 96; *Mego Fin. Corp.*, 213 F.3d at 463; *Sauby v. City of Fargo*, 2009 WL

23   2168942, at *1 (D.N.D. July 16, 2009) (upholding incentive amounts of $5,000

24   and $10,000 because, among other things, "[i]ncentive awards are not intended to

25   'compensate' plaintiffs, but instead serve to encourage people with legitimate

26   claims to pursue the action").

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM

1

## VI.    **CONCLUSION**

2    For all the forgoing reasons, Plaintiff respectfully requests that this Court:

3 (i) approve the Settlement, (ii) approve the agreed upon Fee and Expense Amount,

4 and (iii) approve the requested Service Awards.

5                                             Respectfully submitted,

6 Dated: October 11, 2024                **JOHNSON FISTEL, LLP**

7                                                 */s/ Brett M. Middleton*

8                                             BRETT M. MIDDLETON

9
                                            FRANK J. JOHNSON
10                                           JONATHAN M. SCOTT
                                            501 West Broadway, Suite 800
11                                           San Diego, CA 92101
                                            Telephone: (619) 230-0063
12                                           brettm@johnsonfistel.com
                                            frankj@johnsonfistel.com
13                                           jonathans@johnsonfistel.com
14
15                                           *Attorneys for Plaintiff Grant Smith*
16
17
18                     **CERTIFICATE OF COMPLIANCE**

19    The undersigned, counsel of record for Plaintiff Grant Smith, certifies that

20 this brief contains 6,910 words, which complies with the word limit of L.R. 11-

21 6.1.

22

23  Dated: October 11, 2024                     */s/ Brett M. Middleton*
                                             BRETT M. MIDDLETON
24
25
26
27
28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT,
APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND MEMORANDUM